Lyons-Thomas Hardware Company et al. v. Perry Stove Manufacturing Company et al.

No. 23.

### 1. Corporations Under General Incorporation Law.

Corporations organized under the general laws of the State have no powers other than such as are given by the laws of the State regulating such incorporations; embracing powers, although not expressly given, that are necessary to the exercise of those that are.................... 149

### 2. Same—Limitations Upon Corporate Powers.

The proposition that a corporation created under the general incorporation laws of this State may do any act in reference to its property which a natural person may do with his own, is expressly negatived by the statute.   The purpose for which formed. article 567, must be stated in charter.   Funds can not be used for any other purpose, article 589.  Power is given to purchase, etc., such real and personal estate as the purposes of the corporation shall require, article 575.   This power to buy, sell. etc.. seems to exist only as required to carry on the business or purpose of the corporation.   In this we do not find a grant of power to an insolvent corporation. having ceased operations, to convey to preferred creditors.......................................... 151

### 3. General Incorporation Law—Contracts.

The statute. article 575, prescribes that corporations have power "to enter into any obligations or contracts essential to the transaction of its authorized business."  This restricts the power to contract to the business authorized in the charters.   And when that business ceases without intent by the corporation to resume, the business no longer exists, nor the right to contract therein.................................... 152

### 4. Authorized Business—Cessation of it.

That business was authorized which its charter stated it was formed to pursue.   Business is synonymous with employment, and when that ceases, with no intent that it be resumed, the business no longer existed .................................................................. 153

**5. Same—Borrowing Money, etc.**

Article 577, authorizing the borrowing of money and securing same, evidently refers only to a corporation doing business.................... 154

**6. Insolvency of Corporation.**

The mere insolvency of a corporation, followed by a cessation of business with no intent to resume, will not operate what is technically known as dissolution; but it has been held in many cases, with much reason, that such condition of affairs will confer on creditors practically the same rights as they would have under a technical dissolution......... 155

**7. Same—Trust—Trustees.**

Article 606 establishes the proposition that a trusteeship exists in every dissolution to which it is applicable; and this fixes upon the property a trust primarily for payment of debts. It would seem that such trust relation would result from insolvency and cessation of the business.155, 163

**8. Statutes Discussed.**

Revised Statutes (Sayles' edition), article 1461, on receivers; articles 3460, 3461, limited partnerships; and article 611, on assignments, discussed ........................................................... 156

**9. Assets of Insolvent and Suspended Corporation.**

The assets of an insolvent corporation which has ceased to carry on business, and does not intend to resume, is a fund from which all creditors not secured by valid liens existing before the condition was fixed, have the right to be paid on terms of perfect equality.................... 158

**10. Same.**

The right of an insolvent corporation, having ceased operating in its business, to prefer its creditors, is not expressly given by statute, and it can not be implied, for it is not necessary to the accomplishment of any purpose for which such corporation may be created............. 162

**11. Same.**

A private trading corporation chartered July, 1884, under the general law, having become insolvent, ceased to carry on its business, without any intention of resuming the enterprise, has no power to prefer creditors by mortgage or otherwise. Such condition, under the recognized rules of equity, conferred upon every unsecured creditor the right to a ratable share of the proceeds of all the assets of the corporation lawfully existing when the condition arose ................... 166

CERTIFIED QUESTIONS from Court of Civil Appeals for Second District, in an appeal from Lamar County.

*Maxey, Lightfoot & Denton* and *Dudley & Moore*, for appellants.—1. A private business corporation, when not restrained by statute, has the same power to execute a mortgage as an individual, and if insolvent may, in good faith, execute a valid mortgage with preferences. Rev. Stats., arts. 575, 577, 3128, 3140; Shropshire v. Behrens, 77 Texas, 275; Lewy v. Fischl, 65 Texas, 320; Fagan & Osgood v. Ice Machine Co., 65 Texas, 331; Ellis v. Valentine, 65 Texas, 548; Wagon Co. v. Tidball, 59 Texas, 291; Savings Bank v. Sachtleben, 67 Texas, 425; Canal Co. v. Valette, 21 How., 424; Hotel Co. v. Wade, 97 U. S., 13; Oil Co. v. Marbury, 91 U. S., 587;

Upton v. Tribilcock, 91 U. S., 45; Jones v. Guaranty Co., 101 U. S., 625; Brasher v. West, 7 Pet., 614; Graham v. Railway, 102 U. S., 160; 96 U. S., 258; Pyles v. Furniture Co., 2 S. E. Rep., 909; Warfield v. Marshall, 72 Iowa, 666; Garrett v. Plow Co., 70 Iowa, 697; Sargeant v. Webster, 54 Mass., 497; Ins. Co. v. Page, 66 Am. Dec., 165; Bank v. Whittle, 78 Va., 737; Gould v. Railway, 52 Fed. Rep., 680; Allis v. Jones et al., 45 Fed. Rep., 148; Fogg v. Blair, 133 U. S., 724; Pond v. Farmington, 130 Mass., 170; Hopse v. Car Co., 50 N. W. Rep., 1117; The State v. Bank, 26 Am. Dec., 561; Railway v. Glenn, 28 Md., 287; Catlen v. Bank, 6 Conn., 233; Smith v. Skeary, 47 Conn., 54; De Ruyter Trustees, 3 Barb. Ch., 125; Haxton v. Bishop, 3 Wend., 13; Coats v. Dorenel, 94 N. Y., 178; Warner v. Mower, 11 Vt., 385; 20 Vt., 444; Flint v. Clinton, 12 N. H., 431; Dana v. Bank, 5 W. & S., 223; Oil Co. v. Oil Co., 66 Pa. St., 375; Ex Parte Conway, 4 Ark., 304; Ringoe v. Biscol, 13 Ark., 563, 575; Hopkins v. Gallatin, 4 Humph., 403; Arthur v. Commercial, 17 Miss., 394; Richnold v. Hotel Co., 106 Ill., 439; 2 Davy (Mich.), 530; Chew v. Ellingwood, 86 Mo., 273; Foster v. Mullanphy, 92 Mo., 79; Wilkins v. Bourle, 7 Atl. Rep., 514; Vail v. Jamison, 7 Atl. Rep., 520; McCallis v. Walton, 37 Ga., 611; Tripp v. Bank, 41 Minn., 400; Rubber Co. v. Falley, 30 Fed. Rep., 808; Lippincott v. Carriage Co., 25 Fed. Rep., 577; Jones v. Bank, 10 Colo., 464; Milroy v. Eager, 30 Fed. Rep., 544; White v. Pettis, 30 Fed. Rep., 864; Fitch v. Lewiston, 5 N. E. Rep., 862; 1 Jones on Mort., secs. 102, 124, 134; Jones on Chat. Mort., sec. 51; Wait on Insolv. Corp., secs. 87, 162, 653, 654; 2 Mora. on Corp., secs. 802, 803; Ang. & Ames on Corp., secs. 187, 191; Burr. on Ass., 84; Cool. on Const. Lim., 167, 168; 1 Story Eq. Jur., sec. 370; 2 Kent Com., 11 ed., 382, sec. 33, 532, sec. 29; 2 Water. on Corp., 658, sec. 345; Boone on Corp., 204; 4 Am. and Eng. Encycl. of Law, 220, notes 1, 4; Wait on Fraud. Con., secs. 119, 139; 1 Laws. Rights, Rem., and Prac., sec. 384, note, and authorities cited.

2. A private corporation in this State is authorized by statute to execute a mortgage; and there being no exception in the statute, the courts can not legally engraft one, but corporations have the same right as individuals to execute mortgages preferring their creditors. Rev. Stats., art. 575, subdiv. 4.

All modern text writers lay down the doctrine clearly and emphatically as firmly established, even though some of them say that they regard the rule as an inequitable one. Wait, Morawitz, Brown, Waterman, Angel & Taylor, Cooley, Kent, and Storey, without a single break in the line, say that unless changed by statute, the doctrine is established. Wait says: "Cases may be cited upholding the right of a corporation, unrestricted by statute, to make a preferential assignment. The rule is quite firmly established." Wait on Insolv. Corp., 141, sec. 162. Again he says: "The right of a failing debtor to prefer one creditor to another in the

distribution of his property, while it has often been regretted, is recognized, both in courts of law and equity. A corporation possesses in this respect the same right as an individual." Id., 599, sec. 654.

Mr. Morawitz is equally as strong in asserting the legal right of a corporation to make preferences, and in his strictures against the injustice of the rule, he applies it to individuals as well as corporations. Mora., secs. 802, 803.

Mr. Kent says: "A corporate body, as well as a private individual, when in failing circumstances, and unable to redeem its paper, may, without any statute provisions, and upon general principles of equity, assign its property to a trustee, in trust, to collect its debts and distribute as directed. It has unlimited power over its property to pay its debts. A corporation may also, like an individual, give preferences among creditors, when honestly and fairly intended and done." 2 Kent Com., 11 ed., 382; Whitehall v. Warner, 20 Vt., 425.

We need not quote from the other text writers, but it is enough to say that these great writers, who have examined the question from every standpoint, lay down the doctrine as fully established, unless changed by statute.

In the decisions of the Supreme Court of the United States, unless from some one of the States which had regulated it by statute, and in which case the court was bound by the rule of decision in such State, the right of a corporation to prefer its creditors has been fully recognized. In the case of White Water Valley Canal Company v. Valette, 21 Howard, 424, which was a case from Indiana, the court says: "It is well settled that a corporation, without special authority, may dispose of land, goods, and chattels, or of any interest in the same, as it may deem expedient, and in the course of their legitimate business may make a bond, mortgage, note, or draft; and also may make composition with creditors, or an assignment for their benefit, with preferences, except where restrained by law." Quoting Partridge v. Badger, 25 Barb., 146; Barry v. Merchants Ex. Co., 1 Sandf. Ch., 280; Burr v. Phœnix, 14 Barb., 358; Dahn v. Bank, 5 Wen. & S., 223; Frazier v. Wilcox, 4 Cobb, 517; Bank v. Hath, 5 B. Mon., 423; The State v. Bank, 6 G. & J., 323; Pierce v. Emery, 32 N. H., 486; Hotel Co. v. Wade, 97 U. S., 13; also, see Oil Co. v. Marbury, 91 U. S., 587.

In the case of Jones v. Guaranty and Indemnity Company, 101 United States, 625, Justice Swayne says, in a case where the creditor was not only the owner of most of the stock, but president of the corporation: "At the common law every private corporation had, as incident to its existence, the power to acquire, hold, and convey real estate, except so far as restrained by its charter or by act of parliament. This comprehensive capacity included also personal effects of every kind. The jus disponendi was without limit or qualification. It extended to mortgages given to

secure the payment of debts. * * * It is believed they are held valid throughout the United States, except where forbidden by the local law." Id., 625, 626.

The common law prevails in Texas, unless where changed by statute, and upon this question it has not been changed. Our statutes give to corporations the right to mortgage their property, and no exception is made of insolvent corporations. The courts can not afford to engraft an exception where none is made by law.

3. Where suit is brought by creditors in equity to set aside a mortgage and interfere with the arrangement voluntarily made by the debtor to secure a portion of his creditors, such suit can not be maintained, unless it be shown that such plaintiffs have a valid lien, or have reduced their claims to judgment, and have failed to collect the same under execution. Casaday v. Anderson, 53 Texas, 537; Blum v. Goldman, 66 Texas, 622; Duck v. Peeler, 74 Texas, 268; Sewing Machine Co. v. Atkeson, 75 Texas, 330; Wiggins v. Armstrong, 2 Johns. Ch., 144; Brinkerhoff v. Brown, 5 Johns. Ch., 661; Spader v. Davis, 5 Johns. Ch., 280; Taylor v. Barker, 111 U. S., 110; Public Works v. Columbia College, 17 Wall., 521; Jones v. Green, 1 Wall., 332; McMurtry v. Masonic Temple Co., 5 S. W. Rep., 570; Wait on Insolv. Corp., secs. 34, 86, 157, ch. 4; Wait on Fraud. Con. and Cred. Bills, sec. 75, note, and authorities cited; Burr. on Ass., 746, sec. 503, note 3.

*Hale & Hale, T. S. Hill, Ross & Scott, H. D. McDonald,* and *Park, Ownby & Dailey,* for appellees.—1. An insolvent private corporation, when it ceases to carry on its business, with no intention to continue its legitimate business, and not having the ability to do so, can not pledge its assets or make a valid mortgage, preferring a portion of its creditors to the exclusion of the other creditors, but in such case its assets are a trust fund held by it for the payment of its creditors, ratably; and such creditors have an equitable lien on the assets to secure such ratable payment, and its directors are then trustees for the creditors. Rev. Stats., art. 606; Bank v. Investment Co., 74 Texas, 436; Bank v. Emery, 78 Texas, 505; Lang v. Daugherty, 74 Texas, 231; Seale v. Baker, 70 Texas, 291; Canning Co. v. Fraser, 17 S. W. Rep., 27; Sawyer v. Hoag, 17 Wall., 610, 620; Sanger v. Upton, 91 U. S., 56; Upton v. Tribilcock, 91 U. S., 45; County of Morgan v. Allen, 103 U. S., 508, 509; Barings v. Dabney, 19 Wall., 10; Richardson v. Green, 133 U. S., 44; Railway v. Ham, 114 U. S., 587, 594; Graham v. Railway, 102 U. S., 148, 161; 2 Mora. on Corp., secs. 787, 803, 861–863; Wait on Insolv. Corp., secs. 142, 144, 146; Cook on Stockh. and Corp., sec. 661; Ang. & Ames on Corp., sec. 600; 1 Pome. Eq., sec. 410; Tayl. on Corp., secs. 668, 669; 1 Jones on Liens, secs. 84–86; Thomp. on Lia. of Stockh., sec. 267; Woolen Mills Co. v. Kampe, 38 Mo. App., 229; The State v. Brockman, 33 Mo. App., 131; Rouse v. Bank,

46 Ohio, 493; Olney v. Land Co., 16 R. I., 597; Haywood v. Lumber Co., 64 Wis., 639; Roan v. Winn, 19 Am. and Eng. Corp. Cases, 102; Williams v. Jones, 23 Mo., 132; Marr v. Bank, 4 Colo., 471; Eppright v. Nickerson, 78 Mo., 490; Chew v. Ellingwood, 86 Mo., 260; Hightower v. Mustian, 8 Ga., 506; Foster v. Mill Co., 92 Mo., 79; Beach v. Miller, 19 Am. and Eng. Corp. Cases, 93; Bonton v. Dement, 19 Am. and Eng. Corp. Cases, 311; Powers v. Paper Co., 8 Am. and Eng. Corp. Cases, 269; Turnbull v. Lumber Co., 8 Am. and Eng. Corp. Cases, 257; Hopkins v. Johnson, 90 Pa. St., 69; McDonald v. Ins. Co., 26 Am. and Eng. Corp. Cases, 261.

2. Insolvent corporations which have ceased to do business in this State, or anywhere else, except where allowed to do so by statute, and which have no intention nor the ability to go on and carry out the objects of their creation, have no right to execute mortgages preferring their creditors having no lien on their assets; but in such cases the creditors have a lien in equity, and the assets are in such case a trust fund for the payment of the debts ratably, and its directors or managers are trustees for the creditors, and hold the assets for that purpose. Canning Co. v. Fraser, 17 S. W. Rep., 27, 28; County of Morgan v. Allen, 103 U. S., 508, 509; 1 Jones on Liens, secs. 84–86.

3. Creditors of an insolvent corporation which has ceased to carry on the business for which it was created, have a right in equity to file a creditor's bill to arrest an illegal or fraudulent transfer of its assets, and to recover them from whomsoever they may be found in possession of, without first having reduced their claims to judgment, and in such case they have a lien in equity on the assets, and can follow them and take them, unless they have passed into the hands of an innocent purchaser for a valuable consideration without notice. Woolen Mill Co. v. Kampe, 38 Mo. App., 229, and authorities; Story's Eq., secs. 827, 835, 851; Innes v. Lansing, 7 Paige, 583.

4. When the creditors of an insolvent corporation, by general creditors' bill, seek to set aside a mortgage or deed of trust in which it attempts to convey all its assets to preferred creditors, and the bill seeks to set it aside on the ground of fraud which renders it a nullity, and the creditors filing the bill claim nothing under or by virtue of the instrument, the assignee or trustee in such instrument is competent and is authorized to represent all the preferred creditors in sustaining the conveyance, and in such case it is not necessary to make any or all of the beneficiaries parties defendant. Railway v. Butler, 56 Texas, 509; Perry on Trusts, sec. 594; Pome. on Remedial Rights and Rem., secs. 268, 357, 358, 361, 362; Wakeman v. Grover, 4 Paige Ch., 32, 33; Rogers v. Rogers, 3 Paige Ch., 379; Preston v. Carter, 80 Texas, 388; Harrison v. Stewart, 93 U. S., 155.

5. An insolvent corporation, when it intends to immediately cease to

do business or further carry out the objects of its creation, has no right to convey all its assets to a trustee, giving preference to a portion of its creditors, nor can it thus prefer its members and stockholders.   2 Mora. on Corp., secs. 861, 863; Thomp. on Lia. of Stockh., sec. 267; Bank v. Emery, 78 Texas, 498; McDonald v. Ins. Co., 26 Am. and Eng. Corp. Cases, 261; 19 Johns., 456; 8 Cow., 387; 70 Ala., 120.

STAYTON, CHIEF JUSTICE.—The questions submitted by the Court of Civil Appeals for decision are:

" 1.  Whether or not a preferential deed of trust executed by a private trading corporation (chartered in July, 1884, under general law), after it has become insolvent, and consequently ceased to carry on its business, without any intention of resuming the enterprise, is void as against the unsecured creditors of such corporation ?

" 2.  If a private corporation, under such circumstances, has the same power to prefer its creditors as an individual, whether such preferential deed is void in law because of the fact that the stockholders, directors, and other officers of the corporation who execute it in the name of the corporation are liable as sureties and endorsers on the preferred claims ?"

Both questions present a case in which, on account of insolvency, the corporation had ceased to carry on business and had no intention at any time to resume, when the instrument was executed through which preference was intended to be given.   The corporation was one having no powers other than such as are given by the laws of this State regulating incorporation under the general law, which, of course, will embrace powers, although not expressly given, that are necessary to the exercise of those which are.

It is contended, however, that such corporations have all the powers to give preferences which a person has, so long as the corporate existence continues, unless such power is denied by the common law or by the statutes of this State; and in support of this proposition reference is made to the opinion in case of Riche v. Ashbury Railway Carriage Company, 9 L. R. Exch., 263, in which the court was considering the powers conferred on corporations created under special acts of parliament.

In the course of the opinion, referring to the case of Sutton's Hospital, 10 Coke, 30, it was said, that was " an express authority; that at common law it is an incident to a corporation to use its common seal for the purpose of binding itself to anything to which a natural person could bind himself, and to deal with its property as a natural person might deal with his own.   And further, that an attempt to forbid this on the part of the king, even by express negative words, does not bind the law.   *   *   * I take it that the true rule of law is, that a corporation, at common law, has, as an incident given by law, the same power to contract, and subject to the same restrictions, that a natural person has."

The question involved in that case was, whether a certain transaction was ultra vires, and its solution depended on the question whether corporations incorporated under the general law had the same powers as what may be termed common law corporations.

On appeal to the House of Lords it was held, that a company created a corporation under the general law providing for voluntary incorporation was not a corporation possessed of inherent common law rights, but was limited to the powers properly embraced under the law in the memorandum of association. Railway Carriage Co. v. Riche, 7 Eng. and Irish App., 653.

The English acts regulating incorporation, as do the acts in force in this State on that subject, prescribe the powers corporations organized under them may exercise, and it ought to be deemed settled law that they have only such powers as the acts under which they are created confer upon them. Attorney-General v. Great Northern Railway, 1 Drew & Smale Chan., 154; Eversfield v. Railway, 3 De G. & J., 285; Railway v. Steamboat Co., 107 U. S., 100; Thomas v. Railway, 101 U. S., 81.

In case last cited it was contended, as in this, that a corporation, created as suggested in the questions submitted, may do any act not expressly or impliedly prohibited by its charter, as might corporations at common law; but in reply to this it was said: " We do not concur in this proposition. We take the general doctrine to be in this country, though there may be exceptional cases and some authorities to the contrary, that the powers of corporations organized under legislative statutes are such, and such only, as those statutes confer. Conceding the rule applicable to all statutes, that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others."

In Head v. Insurance Company, 2 Cranch, 127, it was said: "An individual has an original capacity to contract and bind himself in such manner as he pleases. * * * But with those bodies which have only a legal existence, it is otherwise. The act of incorporation is to them an ·enabling act; it gives them all the power they possess; it enables them to contract."

In Davis v. Railway, 131 Massachusetts, 259, it was said, that a corporation " is not vested with all the capacities of a natural person, or of an ordinary partnership, but with such only as its charter confers;" and it may be doubted if the English decisions assert any other rule, except as to corporations existing by prescription, whose existence, as well as powers, must be determined by long and uninterrupted exercise of corporate franchises. If the power thus used be for sufficient length of time as unrestricted in business as is that of a natural person, the same reason exists for presuming that a grant of such power was at some remote period made, as for presuming the existence of a grant of corporate franchise from its exercise for a great number of years.

It is probably true that English courts, in speaking of " corporations by the common law," refer only to those that have exercised corporate powers from time immemorial; and it may be safely assumed that no mere trading corporation was ever thus classified.

Although requested to do so, if possible, counsel have been unable to furnish any decision by an English court, except the one before referred to, which, as we have seen, was expressly overruled, in which it was held that a corporation created under the acts of Parliament regulating the formation and business of companies with corporate powers, had any such powers as are here claimed for trading corporations created under the general laws of this State; and in view of the learning and industry of counsel we feel authorized to conclude that no such decision exists.

Whether such transactions as are set out in the questions propounded are consistent with rules recognized by courts of law, as well as by courts of equity, and by them enforced for the preservation of rights and redress of wrongs, will be considered hereafter.

The broad proposition that a corporation created under the general laws of this State may do any act in reference to its property which a natural person may do with his, is expressly negatived by the statute.

The memorandum of association, termed by the statute the " charter," is required to state " the purpose for which it is formed."   Rev. Stats., art. 567.

This requirement is not solely that evidence may be thus furnished that the company is one intending to pursue a business for which the statute permits incorporation, but is also intended for the protection of those who may become stockholders or creditors; who are entitled to know in what business the corporation may engage, for without this they can not know the extent of its powers nor the hazards to which they may be legally exposed.

The statute further provides, that " no corporation created under the provisions of this title shall employ its stock, means, assets, or other property, directly or indirectly, for any other purpose whatever than to accomplish the object of its creation."   Rev. Stats., art. 589.

The objects of its creation are none other than such as are named in the charter.   A natural person may make any disposition of his property not forbidden by law, and may make any contract lawful within itself; but under the plain terms of the statute referred to a private corporation has no such power.

The statute enumerates the powers of private corporations existing under it, and they will be here noticed.

It declares that they shall have power " to hold, purchase, sell, mortgage, or otherwise convey such real and personal estate as the purposes of the corporation shall require; and also to take, hold, and convey such other property, real, personal or mixed, as shall be requisite for such

corporation to acquire in order to obtain or secure the payment of any indebtedness or liability due or belonging to the corporation." Rev. Stats., art. 575.

No such restrictions upon the power of natural persons to acquire, hold, or dispose of property exists, and the manifest purpose of this statute was not so much to confer power on such corporations to hold, purchase, sell, or mortgage property necessary for the proper transaction of the business named in the charter, as to restrict the power of corporations to hold, buy, sell, or mortgage, subject to one exception, to such property as may be reasonably necessary to the legitimate business of the particular corporation; for without such an express grant of power the incorporation of a company, without authority to carry on a specified business, would carry with it power to hold, purchase, sell, mortgage, or otherwise convey property necessary to that business.

Power to hold, purchase, and sell property would be absolutely necessary to the business of any trading corporation, and power, through mortgage or like conveyance, to acquire means with which to purchase property necessary to carry on the business would also exist.

It will be observed that the powers mentioned in the statute are authorized to be exercised in relation to such property " as the purposes of the corporation shall require; " and they are all powers ordinarily necessary to be exercised while a business is in active operation with a view to obtain the results contemplated when a corporation is created; and the exercise of some of them, as the powers to hold and to purchase such property as the business of the corporation may require, would be necessary or permissible, looking to the rights of stockholders and creditors, only when the business was being carried on.

If a corporation be created with power to manufacture cotton or woolen goods, its power to buy and hold raw material while the business was carried on would be clear; but suppose such a corporation to become insolvent, and on that account to cease business, with intent never to resume it, would it be contended that it had power to buy and hold wool or cotton for purposes of speculation? The statute answers the question.

Some of the powers mentioned, however, may be as advantageously used in winding up the affairs of a corporation as in carrying it on; and those are the powers to sell, mortgage, and otherwise convey; but it must be kept in mind that the exercise of these powers, if we look alone to the statute under consideration as their source, is authorized only in reference to such property " as the purposes of the corporation require " to be sold, mortgaged, or otherwise conveyed.

If these powers stood alone, it ought to be held that they might be exercised whenever necessary or advantageous to sell, mortgage, or otherwise convey, as in winding up the affairs of a private corporation; but

standing in connection, as they do, with powers relating to the same property which can be exercised upon such property only when it is necessary to carry on the corporate business then continuing, it may be doubted if the statute under consideration has any application to the winding up of the affairs of an insolvent corporation that has ceased to do business.

If by the word "purposes" be meant the business or occupation, in all its phases, which the corporation by its charter is empowered to pursue, as is meant by the word "purpose" in that part of the statute requiring "the *purpose* for which it is formed" to be stated in the charter, then it is evident that the statute has application only to powers to be used while the business for which the corporation was given existence is carried on.

The power of a trading corporation to sell or to mortgage property to raise money to pay its debts during its active life or after it has become insolvent and ceased business, is not controverted; but that is not the immediate question under consideration, for the present inquiry is, does the statute now under consideration, as claimed, expressly or by necessary implication, confer on a corporation circumstanced as was the hardware company, power to make the conveyance in question.

If such a power existed, we are of opinion that it must be found elsewhere.

The statute further provides, that private corporations have power "to enter into any obligation or contract essential to the transaction of its authorized business." Rev. Stats., art. 575.

This statute must be considered in connection with the one just passed from, and with any other relating to the powers of private corporations, in order to understand and arrive at the legislative intent.

It will be observed that this statute empowers such corporations to enter into any contract or obligation whatever, with only one restriction, which is, that the contract or obligation *must be essential to the transaction of the corporation's authorized business.*

What was the *authorized business* of the private corporation making the conveyance in question? ·

That *business* was *authorized* which its charter stated it was formed to pursue.

What was that business? "Business" is defined to be "That which busies, or that which occupies the time, attention, or labor of one as his principal concern, whether for a longer or shorter time; employment; occupation." Webster. "'Business' is a word of large signification, and denotes the employment or occupation in which a person is engaged to procure a living." Goddard v. Chaffee, 2 Allen, 395.

"It is the synonym of employment, signifying that which occupies the time, attention, and labor of men for the purpose of a livelihood or profit." Martin v. The State, 59 Ala., 36.

The corporation making the conveyance in question was a private trading corporation, the business of which consisted in buying and selling for profit in the ordinary course of mercantile business.

That was its *business*, within the meaning of the statute, and when that ceased without intent to resume, the *business* no longer existed, and no contract thereafter made *could be essential to the transaction of*—the doing of—*that business*.

The mere act of paying or securing an indebtedness can never become a *business*.

This statute is broader than that before noticed, and evidently was intended to apply only to such contracts and obligations as it might become necessary to assume or make in carrying on the business for which incorporation was given.

One applies, in terms, to power over property necessary to be held or purchased to carry on the corporate business, and to property necessary to sell, mortgage, or otherwise convey for a like purpose; while the other applies to every kind of obligation or contract necessary to be made or assumed because essential to the transaction of its authorized business.

The statute further provides, that "Corporations shall have power to borrow money on the credit of the corporation, not exceeding its authorized capital stock, and may execute bonds or promissory notes therefor, and may pledge the property and income of the corporation." Rev. Stats., art. 577.

Was it by this statute intended to confer power on a corporation to borrow money and encumber its property to secure its payment, when the corporation, because of insolvency, had ceased to do business, with intent not to resume?

The limitation on the sum to be borrowed, evidently based upon the presumed ability to pay to that extent, and the fact that the pledging of the income is authorized, would seem to forbid the belief that a corporation so circumstanced was contemplated by the act, for such a corporation would have no income to pledge.

These are all the provisions of the statute affecting the powers of private corporations, and it certainly is true that they do not confer upon them, in reference to corporate property, that unrestricted power a natural person has over his own.

No parts of the acts of the Legislature affecting private corporations carried into the Revised Statutes or subsequently enacted, except chapter 5, title 20, Revised Statutes, seem to have application to the winding up of the business of an insolvent corporation after it has ceased to do business, with intent not to resume; nor do they undertake to declare the rights of creditors under such circumstances; but do seem to apply only to the creation, organization, powers, general management, and like matters looking to the right to carry on and the active transaction of the business

for which incorporation is given in the particular instance; and for this reason such parts of the statute can not be looked to in order to determine the rights of creditors or the powers that may be exercised by the corporation under such circumstancs.e

Such rights and powers must be determined by the general principles of law applicable to the conditions, if they be not controlled by statute.

Among other things, chapter 5, title 20, Revised Statutes, provides, that "Upon the dissolution of any corporation already created by or under the laws of this State, unless a receiver is appointed by some court of competent authority, the president and directors, or managers of the affairs of the corporation at the time of its dissolution, by whatever name they may be known in law, shall be trustees of the creditors and stockholders of such corporation, with full power to settle the affairs, collect the outstanding debts, and divide the money and other property among the stockholders, after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them; and for this purpose they may maintain or defend any judicial proceeding." Rev. Stats., art. 606.

These trustees are made responsible to creditors and stockholders to the extent of property and effects that shall have come into their hands. Rev. Stats., art. 607.

By "dissolution," as here used, is meant that result which follows the expiration of time limited by its charter, or the result of a judgment of a court of competent jurisdiction declaring the dissolution. Rev. Stats., art. 604.

The mere insolvency of a corporation followed by cessation of busioess, with no intent to resume, will not operate what is technically known as dissolution; but it has been held in many cases, with much reason, that such condition of affairs will confer on creditors practically the same rights as would they have under technical dissolution. Slee v. Bloom, 19 Johns., 456; Briggs v. Penniman, 8 Cow., 387; Bank v. Ibbotson, 24 Wend., 478; Carey v. Railway, 5 Iowa, 357; Moore v. Whitcomb, 48 Mo., 543; Savings Association v. Kellog, 52 Mo., 588.

Article 606, Revised Statutes, establishes the proposition, that a trusteeship exists in any case of dissolution to which it is applicable, and this necessarily fixes upon the property a trust primarily for the payment of debts; and we see no good reason, so far as creditors are concerned, why the facts shown to exist by the certificate before us should not be given the full effect technical dissolution would have.

If, however, that article is to be limited in its operation, it indicates the legislative policy in such cases.

This is illustrated by other legislation. Whenever a sale is made of the roadbed, track, franchise, and chartered powers and privileges of a railway corporation, unless a receiver be appointed, the directors or man-

agers are made trustees for the creditors and stockholders of the sold-out company, with full power to administer the unsold estate, first for the benefit of creditors, and to them are responsible to the extent of property received. Rev. Stats., art. 4264. When there is a trustee clothed with such power over property, a trust strictly exists which the cestui que trust may enforce.

This is an instance of a trust on corporate property in behalf of creditors, when there has been no dissolution of the corporation, and this is simply because the property is no longer used or intended to be used for the corporate purposes for which it was originally acquired.

While the general rule is that the insolvency of a corporation will not authorize the appointment of a receiver at the suit of a creditor so long as it is honestly carrying out the business for which it was incorporated, still such appointment may be made if the creditor's right is imperilled by a threatened misappropriation of assets; and this is upon the ground that the corporate property is a trust fund to which the creditor has the right to look for payment of the debt due him.

By a recent statute the appointment of a receiver is authorized when a corporation is insolvent or in imminent danger of insolvency, as when it has been dissolved. Sayles' Civ. Stats., art. 1461.

Without considering whether there may be implied limitations to this statutory rule, it illustrates the fact that in this State mere insolvency of a corporation has been made a ground for the appointment of a receiver, doubtless for the purpose of enforcing claims against the corporate property in behalf of creditors, which could not be thus enforced without recognition of the fact that the property is, at least in a limited sense, a trust fund to which creditors have the right to resort.

A limited partnership, under the statutes of this State, in a respect material to the question before us in this case, is very similar to a corporation.

The special partner is liable for debts of the partnership only to the extent of the fund contributed by him to the partnership, as is the stockholder in a corporation liable only to the extent of his stock subscription; but the Legislature of this State, recognizing that all creditors of such a partnership have equal claim upon the assets of such a firm when insolvent or in contemplation of insolvency, has declared, that "any sale, assignment, or transfer of any property or effects of the partnership when insolvent or in comtemplation of insolvency, or after or in contemplation of insolvency of any partner, with the intent of giving a preference to any creditor of such partnership or insolvent partner over other creditors of such partnership, and every judgment confessed, lien created, or security given by any such partnership under the like circumstances and with like intent, shall be void as against the creditors of such partnership." Sayles' Civ. Stats., art. 3460.

This statute simply gives legislative sanction to the proposition, often asserted and sometimes denied in cases of insolvent corporations, that when there is no personal liability for a debt, and the creditor must look to a fund such as the capital of a corporation, that such fund is a trust fund, if the corporation is insolvent and has ceased business, to which the creditor may revert on terms of equality with other creditors who acquired no lien prior to the time the trust character attached.

This statute makes a broad application of that rule, even where there is a personal liability on the part of the general partners, on the ground that as to the special partner there is no personal liability.

The succeeding article denies the right even of the general or special partner, under such circumstances, to make any sale, assignment, or other transfer of or to create any lien on property of the general or special partner, with intent to give a creditor of himself or of the partnership a preference over the other partnership creditors. Sayles' Civ. Stats., art. 3461.

Under the statutes in force in this State, if an insolvent corporation, in contemplation of an assignment under the statute, with intent to give preference to one creditor, should convey to him property of the corporation, this would be invalid as to other creditors, and the property would pass to the assignee under a subsequent assignment for the benefit of all creditors, unless the person so taking took under circumstances that would constitute him a bona fide purchaser, which could not well be if the corporation was insolvent and was known to have ceased business on that account; for such knowledge of itself would seem sufficient to put the purchaser on inquiry. Sayles' Civ. Stats., art 61i.

This statute further illustrates the fact that the property of an insolvent corporation is deemed in this State a trust fund, and emphasizes the right of all of its creditors to equality in distribution of its assets, as against all other creditors who had not acquired superior right prior to known insolvency.

In the application of principles illustrated by this statute, ought the fact that the insolvent corporation subsequently made no general assignment, and made, in effect, only mortgages conveying all of its property, as from the papers certified by the Court of Civil Appeals appears to have been the case, to affect the rights of the parties?

The mortgages, if sustained, would give preferences as fully as would absolute conveyances, and all of the corporate property, if not more than sufficient to pay the preferred claims, would pass from the corporation as fully as would it by subsequent assignment.

These statutes have been referred to not because any of them, in terms, declare the law applicable to the questions propounded, but because they indicate the trend of legislation on some essential matters involved in the questions, and tend to support the proposition, through analogies, that

the assets of an insolvent corporation, which has ceased to carry on business and does not intend to resume, is a fund from which all creditors, not secured by valid liens existing before the condition was fixed, have the right to be paid on terms of perfect equality.

If such a fund be a trust fund, then the assets of a corporation so circumstanced are trust funds, and those whose rights and duty it is to administer such a fund are trustees.

We have seen that such corporations as the hardware company in England and in this State have not the same powers in reference to property owned by them for corporate purposes as have natural persons, and that in this State there is no statute, expressly or by necessary implication, conferring on such corporations power to make preferential mortgages or like conveyances when in condition assumed in the questions propounded; and the question arises whether, under the general principles of law and equity applicable to such a condition, such a power exists.

No English decision has been furnished in which the questions involved arose or were discussed; and it is probably true that the laws of that country, in regard to insolvent corporations and persons, have been such for three centuries past that no claim would be made in the courts of that country that such conveyances as the questions submitted refer to were valid against other creditors.

We take it for granted that all English courts, under the laws of that country, would hold all such attempted preferences unauthorized and illegal when made by an insolvent corporation circumstanced as was the hardware company, and therefore seek no further for authority from that source.

It would be a useless consumption of time to review the many American decisions bearing on the questions submitted; for it must be conceded that they are clearly in conflict, and that on each side of the question may be found many decisions made by courts eminent for learning and conservatism; but reference will be made to a sufficient number on each side of the question to show the grounds on which these conflicting decisions rest.

Catlin v. Eagle Bank, 6 Connecticut, 233, is a leading case, and is understood to rest on substantially the same facts presented in first question certified, except that it does not appear that there was no intention to resume the corporate business.

While conceding that such corporations derive their powers solely from their charters, it was assumed that an insolvent corporation which had ceased to do business had the same power in the management and disposition of its property as had natural persons, and that for this reason the officers of such corporation might prefer creditors.

It was further held, that under such circumstances no trust relation ex-

isted between the managing officers of the corporation and creditors, and that no trust attached to the property of the insolvent corporation in behalf of creditors.

In Dana v. Bank, 5 W. & S., 223, preference was given to named creditors through conveyance of property in trust to be sold for their benefit, when the corportion was insolvent; but it does not appear that this was done after the incorporation had ceased to do business, or that this made cessation of business necessary, nor that this was contemplated.

The court held, that under the principles of common law such corporations had certain powers enumerated, and power to do all other acts that a natural person had, unless restrained by its charter or some other act.

In the course of the opinion it was said: "Although there are some restrictions placed on the bank by the act establishing it, yet it can not be pretended, or at most can not be shown, that the bank, or its president and directors, are either expressly or impliedly restrained from giving, directly or indirectly, preference to some of its creditors over others. And not being restrained in this respect by this or any other act, it must be deemed to have the same power to make a distinction between its creditors, and to give preferences to some of them over others, that any natural person has."

In Wilkinson v. Bauerle, 41 New Jersey Equity, 636, it appeared that the directors of a corporation transferred all of its assets to one of its directors after it became insolvent. The sale was made to give preference, and this by other creditors was claimed to be illegal as to them; but the court said: "The correctness of this view and the success of the contention now made, depend upon the legislation now in force respecting this subject. For if there be no legislative prohibition against the transfer of corporate property, or its use in preferring creditors after insolvency, no reason can be given why such transactions should be invadidated which would not also invalidate the like transactions of individuals."

It was held in that case, however, as the purchaser was a director who took part in the transaction, that it was incumbent on him to show that he paid fair value for the property, or otherwise he should be held responsible for the difference between that and the price paid.

In Pyles v. Furniture Company, 30 West Virginia, 123, it was held, that an insolvent corporation, having ceased to do business, has the same power as an insolvent individual to prefer a creditor in a general assignment of all its property for the payment of its debts; but it seems this decision was controlled by a statute, but for which the court would have held otherwise, as is shown in the opinion as well as by the cases of Lamb v. Laughlin, 25 West Virginia, 300, and Lamb v. Cecil, 28 West Virginia, 653.

In Warfield, Howell & Co. v. The Marshall County Canning Company, 72 Iowa, 670, it is said, speaking in a case in which the effect of a mort-

gage to directors was to defeat the claims of other creditors: "The mortgagees, it is true, were officers and stockholders of the corporation, but notwithstanding that fact they had the right to procure the corporation to execute the mortgage, although other creditors of the corporation are unable to obtain the payment of their indebtedness. Corporations can make contracts, and transfer property, possessing the same powers in such respects as private individuals. Code, sec. 1059. Such is the rule in the absence of a statute, and therefore it has the right to prefer one creditor to another. 2 Mora. on Priv. Corp., sec. 802. The fact that the preference is exercised in favor of directors or shareholders of the corporation is immaterial, although the directors or shareholders may have voted for the proposition, and the security given was to secure an indebtedness to himself." The facts of that case, it is proper to say, may not have been practically the same as those made the basis of the questions propounded, but it tends to show the grounds of decisions holding that at all times prior to technical dissolution, corporations have power, when insolvent, to give preferences even to directors.

Many other cases might be referred to bearing on both states of fact presented in the questions propounded, but those already noticed give substantially the grounds on which rest all the opinions holding such transactions legal.

Rouse, Trustee, v. National Bank, 46 Ohio State, 493, involved the facts presented in the first question propounded, and in that case the doctrine that corporations have the same power over corporate property as have natural persons was denied.

Approving the principles announced in Wood v. Dummer, 3 Mason, 311; Sanger v. Upton, 91 United States, 52; and Curran v. State of Arkansas, 15 Howard, 312, and quoting with approval from the opinion, it was held, "that when a corporation for profit * * * becomes insolvent and ceases to carry on its business or further pursue the purposes of its creation, the corporate property constitutes a trust fund for the equal benefit of the corporate creditors, in proportion to the amounts of their respective claims; and that it can not then, by pledge or mortgage of the property to some of its creditors as security for antecedent debts, without other consideration, create valid preferences in their behalf over the other creditors, or over an assignment thereafter made for the benefit of creditors."

The case of Marr v. The Bank, 4 Colorado, 471, involved substantially the same facts, and therein the same rules were announced, with citation of many cases.

The case of Appleton v. Turnbull, 84 Maine, 72, rested on facts which made it necessary to determine the character of the assets of an insolvent corporation and the rights of its creditors, and in the opinion it was said: "It is too firmly established at the present day to be questioned, that the

capital stock of a corporation is a trust fund for the payment of its debts. It is a substitute for the personal liability of the individual members of private partnerships, and those who deal with the corporation have a right to rely upon its capital stock for their security. Unpaid stock is as much a part of the assets of the corporation as the money that has been paid in upon it. * * * During the existence of the life of the corporation it is a trust to be managed for the benefit of the stockholders; but in the event of its dissolution or insolvency, it becomes a trust fund for the benefit of its creditors. If in such case the assets are not sufficient to pay all its debts in full, each creditor is equitably entitled to receive a ratable share of the assets which remain. * * * In such cases the doctrine laid down by the courts for thirty years is, that they must pay up their shares in full, and are entitled only to a ratable distribution of all the company's assets, and are to receive dividends upon their claims against the corporation in common with other creditors. Mora. on Priv. Corp., sec. 861; Cook on Stock and Stockh., sec. 193. The rule was settled by the Supreme Court of the United States in Sawyer v. Hoag, 17 Wallace, 610, where the court say: ' The debt which the appellant owed for his stock was a trust fund devoted to the payment of all the creditors of the company. As soon as the company became insolvent, and this fact became known to the appellant, the right of setoff for an ordinary debt to its full amount ceased. It became a fund belonging equally, in equity, to all the creditors, and could not be appropriated by the debtor to the exclusive payment of his own claim.' Scovill v. Thayer, 105 U. S., 143, 152; Sanger v. Upton, 91 U. S., 56; Stockton v. Mechanics Bank, 32 N. J. Eq., 163, 167; Williams v. Traphagen, 39 N. J. Eq., 57; Wheeler v. Millar, 90 N. Y., 353. The same rule prevails in England, as may be seen in the leading decision of Grissell's case, L. R., 1 Ch., 528. If the defendant's rights, as well as his duties, were to be determined by the common law alone, it is evident that the defense interposed in this case could not prevail.''

In Woolen Mill Company v. Kampe, 38 Missouri Appeals, 229, the general questions involved in this case are considered; and after stating the general powers of a corporation while carrying on its business, and the right to protection persons obtaining preferences in good faith would be entitled to, the court said: '' But these principles are only applicable to what may be termed or designated as ' going concerns.' They can not be applied to insolvent corporations. By this we do not wish to be understood as deciding that a corporation that is financially *embarrassed* will be deprived of the right to deal with its corporate property in a legitimate and proper way; but we do say, that when the corporation is hopelessly insolvent, and there is no reasonable or well founded hope for a continuance of its business, and these facts are known to its officers and directors, then all of the assets of the corporation become a trust fund in the hands

of the directors, to be administered by them as trustees or agents for the equal benefit of all the creditors of the concern; and any attempted preference in favor of the directors themselves, or of a stranger, will not be upheld. Williams v. Jones, 23 Mo. App., 132; Roan v. Winn, 93 Mo., 503; Foster v. Mullanphy Planing Mill Co., 92 Mo., 79.''

The same reasons for denying an insolvent corporation so circumstanced power to give preferences are announced with much clearness and force in the following cases: Olney v. Connecticut Land Co., 16 R. I., 597; Haywood v. Lumber Co., 64 Wis., 639; Beach v. Miller, 130 Ill., 162; Corey v. Wadsworth, 38 Am. and Eng. Corp. Cases, 164; Turnbull v. Lumber Co., 55 Mich., 387; Adams v. Milling Co., 35 Fed. Rep., 433; Howe, Brown & Co. v. Sanford Fork and Tool Co., 44 Fed. Rep., 231; Consolidated Tank Line Co. v. Varnish Co., 45 Fed. Rep., 7.

The line of decisions first referred to, in substance, holds that insolvent corporations, even though they have ceased to do business, have the same power to give preferences as have natural persons, on the theory that unless their charters forbid this it is an implied power; but this seems indefensible, under the rules applicable to the construction of charters such as may be granted to private corporations under the general laws in force in this State.

The power is not expressly given, and it can not be implied; for it is not necessary to the accomplishment of any purpose for which such corporation may be created.

While such a corporation is carrying on its business, it has power to buy on credit such property or to secure such services or funds as may be reasonably necessary for the transaction of its legitimate business; and to secure indebtedness thus incurred may give mortgages or other security, and thus give preferences, although in fact insolvent.

The exercise of such a power may often be not only beneficial but necessary for the continuance or prosperity of the business, but no such necessity can exist when the business has been abandoned.

Self-interest, while the business is honestly carried on, will ordinarily be sufficient to prevent abuse of what is then a right; but when the business has ceased on account of insolvency, stockholders have no further beneficial interest in the corporate assets, and they have no right or power, directly or through the managing officers, through preferences, in effect, to pay or secure some of the creditors at the expense of others, if the law be that the assets of an insolvent corporation that has ceased business, with no intent ever to resume, is a fund held in trust for creditors; for in such a fund all creditors have equality of right, unless prior to the condition which gives that, one or more have acquired right to priority.

The second class of cases, to which reference has been made, seems conclusively to establish the proposition that the assets of a private corporation, circumstanced as was the hardware company at the time its directors

attempted to give preferences, are a trust fund held for the benefit of creditors; a fund which they have a right to have converted into money, and that distributed among them ratably.

The reasons for holding the assets of such an insolvent corporation to be a trust fund for the payment of its debts are set forth so clearly and fully that we will not undertake to restate them or to give additional reasons, but will simply refer to some of the opinions giving the grounds, among which are the following: Wood v. Dummer, 3 Mason, 308; Curran v. The State, 15 How., 315; Sanger v. Upton, 91 U. S., 60; Marr v. The Bank, 4 Colo., 476; Sawyer v. Hoag, 17 Wall., 610; County v. Allen, 103 U. S., 508.

The subject is elaborated by elementary writers. Tayl. on Priv. Corp., 654–659; Mora. on Priv. Corp., 780–803; Wait on Insolv. Corp., 142–157; 2 Water. on Law of Corp., 120–140; Cook on Stock and Stockh., 199; Ang. on Corp., 600–604.

Whatever technical objections may be urged to the use of the words "trust" and "trustee" in such a connection, is a matter of no importance; for the substance of the matter is, that the word "trust" is used to express the fact that creditors of an insolvent corporation have the right to have the specific property owned by the corporation subjected to the payment of the sums due them; and the word "trustees" is used to give expression to the fact that the directors, or other managing officers of such a corporation lawfully having possession and control of such assets, are under obligation so to apply them.

If more appropriate terms be suggested, courts will no doubt be willing to adopt them.

All of the decisions of the Supreme Court of the United States are understood to hold, that these terms properly describe the relation between creditors of an insolvent corporation and its assets and officers lawfully controlling them, and to give the usual effect to such relations; but it is suggested that the opinion in Smith Purifier Company v. Groarty, 136 United States, 241, casts a doubt upon this subject, or suggests limitations that would affect the questions involved in this case.

The opinion is not so understood; and it may be true that the real difficulty some courts may have had was not so much any doubt upon the question whether the assets of an insolvent corporation were a trust fund which creditors had a right to have subjected to payment of sums due them, as was it on account of a doubt as to the time when and circumstances under which such right so attached as to cut off all power of directors or of stockholders to confer upon any person as a creditor, by way of preference, a right inconsistent with the right of all creditors to a ratable distribution of the proceeds of such assets, as against all other creditors not holding legal priorities.

The cases cited in the opinion referred to will be noticed, with a view

to illustrate the fact that no limitation of the general rule was intended, as well as to show when that court has understood the rule to become operative as to creditors.

In case of Graham v. Railway, 102 United States, 148, it appeared that a solvent corporation, with no fraudulent intent, disposed of lands for an inadequate consideration, and a subsequent creditor sought to apply the rule in his favor; but the court held that he could not question the transaction.

The court, however, said: "When a corporation becomes insolvent, it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors. A court of equity at the instance of the proper parties will then make those funds trust funds, which, in other circumstances, are as much the absolute property of the corporation as any man's property is his."

In Richardson's Executor v. Green, 133 United States, 30, it appeared that Richardson loaned a sum of money to a railway company, and as a bonus therefor received shares of paid up stock and bonds, and was given practical control of the board of directors, and he afterwards received other bonds as further collateral, when he proposed to make further advances if three hundred other bonds were put in his hands as collateral. This was done, but he advanced no more money, and after the insolvency of the company he claimed to hold bonds last mentioned and those given as further collateral to secure the sum lent. When these things occurred he was acting as treasurer of the company. It was held, that as between him and other creditors of the company, he could not, under the circumstances, hold them as collateral for his debt. The bonus was also held to be illegal.

The court quoted with approval so much of the opinion in Graham v. Railway as has been inserted, and from the opinion in case of Railway v. Harn, 114 United States, 587, as follows: "The property of a corporation is doubtless a trust fund for the payment of its debts, in the sense that when the corporation is lawfully dissolved and all its business wound up, or where it is insolvent, all its creditors are entitled in equity to have their debts paid out of the corporate property before any distribution thereof among its stockholders. It is also true in the case of a corporation, as in that of a natural person, that any conveyance of property of the debtor, without authority of law, and in fraud of existing conditions, is void as against them;" and the court then said, that "the principle underlying all of the decisions which we have cited upon this point is, that the capital stock of a corporation, when it becomes insolvent, is in law assets of the corporation, to be appropriated to the payment of its debts; and that creditors have the right to assume that the stock issued by a corporation and held by its stockholders as paid up stock had been paid up; or if un-

paid, that a court of equity, at the instance of the proper parties, could require it to be paid up.''

In Fogg v. Blair, 133 United States, 534, also cited, it appeared that a railway company in purchasing the road and property of another company, agreed to pay a claim held by a person against the latter company, but in no way secured by lien on its property; and after the sale the holder of that claim sought to give it priority over a mortgage made by the purchasing company to secure an issue of bonds; but the court held that this could not be done, and in the course of the opinion said: '' We do not question the general doctrine invoked by the appellant, that the property of a railway is a trust fund for the payment of its debts, but do not perceive any place for its application here.   That doctrine only means that the property must first be appropriated to the payment of the debts of the company before any portion of it can be distributed to the stockholders; it does not mean that the property is so affected by the indebtedness of the company that it can not be sold, transferred, or mortgaged to bona fide purchasers except subject to the liability of being appropriated to pay that indebtedness.''

The case of Peters v. Bain, 133 United States, 670, while it asserts the general rule as to the trust character of the assets of a corporation, and the relation of directors to that and to creditors, seems to have no application to any question involved in questions submitted.

In so far as the rights of creditors of an insolvent corporation are concerned, there exists no good reason for making any distinction between unpaid subscriptions for stock and other corporate assets, for each belong to the fund from which creditors are entitled to be paid.

As we have before seen, in so far as the rights of creditors are concerned, the consequences of technical dissolution occur when corporation is in condition set forth in questions propounded, and in addition to authorities cited on that point the following are now added:   Graham v. Railway, 102 U.S., 161; Railway v. Harn, 114 U. S., 587; Corey v. Wadsworth, 38 Am. and Eng. Corp. Cases, 171.

In case last cited, after announcing the general principles governing the assets of an insolvent corporation, the court answered a question involved in cases of this character as follows: ''At what stage of a corporation's affairs must it be pronounced insolvent, so as to bring it within the principles we have declared?   It is not enough that its assets are insufficient to meet all its liabilities, if it be still prosecuting its line of business, with the prospect and expectation of continuing to do so; in other words, if it be, in good faith, what is sometimes called a ' going ' business or establishment.   Many successful corporate enterprises, it is believed, have passed through crises, when their property and effects, if brought to present sale, would not have discharged all their liabilities in full.   We feel safe in declaring that when a corporation's assets are in-

sufficient for the payment of its debts, and it has ceased to do business, or has taken or is in the act of taking a step which will practically incapacitate it for conducting the corporate enterprise with reasonable prospect of success, or its embarrassments are such that early suspension and failure must ensue, then such corporation must be pronounced insolvent.''

The case made by the questions propounded bring it clearly within so much of the rule thus stated as may be safely adopted, and it is not now necessary to inquire whether other points should be qualified.

The conditions of the corporation set forth in the questions propounded, under the long recognized rules of equity, conferred upon any unsecured creditor of the corporation the right to a ratable share of the proceeds of all the assets of the corporation not subject to priorities lawfully existing when this condition arose; and we therefore answer, that neither the stockholders nor directors of the insolvent corporation had lawful power, under the facts stated, to make a preferential deed of trust, whereby any creditor, whether a stockholder, director, or other officer of the corporation or not, could acquire a preference, and that the attempted preference would be invalid as to other creditors of the corporation.

Delivered November 16, 1893.