**VAN SICKLE et al. v. LOCKE.**

No. 14007.

Court of Civil Appeals of Texas. Dallas.

April 15, 1949.

Rehearing Denied May 13, 1949.

Malone, Lipscomb & Seay and Hassell & Hassell, all of Dallas, for appellants.

James S. Grisham, of Dallas, and Thomas Y. Banks, of Tyler, for appellee.

CRAMER, Justice.

Appellants state the nature of the suit as follows: "This was a suit instituted on August 18, 1944 by L. J. Van Sickle against AAA Air Conditioning & Manufacturing Corporation of Texas, six other corporations, N. S. Locke, individually, N. S. Locke, Trustee and three copartnerships in which N. S. Locke was alleged to be a partner or which he was alleged to control. The suit was based upon a series of contracts promising plaintiff a share in the profits of certain construction contracts and subcontracts made by the corporations. Plaintiff charged that N. S. Locke dominated and controlled all of the corporations and partnerships and that they were in fact his alter ego; that N. S. Locke had confused the records, accounts, funds and properties of the company and had appropriated the same to his own use and benefit and prayed for judgment against the corporations, partnerships and Locke, individually. Plaintiff sought and obtained interlocutory relief, including the appointment of a receiver. C. W. Hicks and G. C. Webb intervened as plaintiffs upon like allegations, seeking like relief and after the appointment of a receiver there were interventions by other creditors, the appointment of a master in chancery to hear claims and finally the Van Sickle, Hicks and Webb claims were heard by the court without a jury, following which the court (Tr. 192) entered judgment against the receiver and the corporations in favor of Van Sickle in the amount of $63,125.00, Hicks in the sum of $35,000.00 and Webb in the sum of $10,752.00, but denied them judgment against Locke and the other defendants. It is from the order denying judgment against Locke that this appeal is prosecuted."

Appellants assign four points of error as follows: "1. Since it was shown without substantial contradiction in the record that N. S. Locke was the only party at interest in any of the active corporations and partnerships; that he dominated, controlled and managed them in all matters affecting

their operation, including the appointment and dismissal of directors and officers, in complete disregard of the laws of the state or proper corporate practice, it was clear that the said corporations were but the shadow and alter ego of N. S. Locke and he himself was personally and primarily liable for the obligations created by and arising in the course of operation of the business including the obligations to appellants. 2. Where, in addition to being the only party at interest in any of the corporation and in addition to his complete domination of the corporate affairs of the several corporations, N. S. Locke caused to be transferred upon his ipse dixit and without consideration the moneys and properties of the several corporations from one to another and to himself or to enterprises and partnerships which he owned and controlled, it was the duty of the court as a matter of law to render judgment against N. S. Locke personally for the obligations arising in the course of the operations of such businesses. 3. Where it appeared that corporations wholly dominated and controlled by N. S. Locke who exercised without hinderance absolute power over their every act, including the transfer to himself without consideration of money and property received by said corporations, had been stripped of their assets, and that the same had passed into the hands or under the control of N. S. Locke, he became liable to the creditors of said corporations not only because such creditors were in fact and in law his creditors, but also as trustee and the court should have rendered personal judgment against him for the claims of appellants. 4. The existence of the corporate entity will not be recognized as a bar to the claim of a creditor directly against N. S. Locke where the corporations existed only as the shadow of N. S. Locke and are sought to be used as a shield to protect him, since to deny appellants recovery against N. S. Locke personally would be to permit the use of the corporate entity to further acts of fraud and wrongdoing and not merely acts of nonfeasance or mismanagement."

Appellee answers with four counterpoints as follows: "(1). Appellants could not recover against N. S. Locke, individually, in disregard of the corporate entities, because, at the time of the trial, they had elected to proceed in recognition of the corporate entities, and were estopped to assert a different mode of action. (2) Appellants could not recover against N. S. Locke, individually, since they had procured the appointment of a receiver for corporate entities, and the frauds, conversions and other tortious acts charged against Locke, with respect to corporate assets, were not actionable by appellants as individual creditors, but were only actionable by the receiver for the benefit of the creditors as a whole. (3). Appellants could not recover against N. S. Locke, individually, because the receiver appointed at their instance had already proceeded against Locke, and recover judgments against him for the benefit of the creditors, including appellants. (4) Appellants could not recover against N. S. Locke, individually, because such recovery would amount to a double recovery against Locke."

The record fully sustains the factual basis set out in appellants' points; and if the facts made the basis of appellee's counter points are not a complete defense to appellants' claim to a judgment against N. S. Locke, personally, the judgment below is in error. Appellee sets out the facts in abstract form as a basis for his points which we find to be correct. They read as follows: "The original plaintiff, Van Sickle, and the intervenor, Hicks, (both appellants herein) declared upon certain contracts entered into between them and AAA Air Conditioning & Manufacturing Corporation and AAA Plumbing Corporation; and the intervenor, Webb, (also an appellant herein) sought to recover on a contract he had with AAA Air Conditioning & Manufacturing Company. Several other corporations, all bearing the prefix "AAA", as well as a number of individuals, including N. S. Locke, were joined as parties defendant. Under substantially the same allegations, the plaintiff and the intervenors (appellants herein), sought the appointment of a receiver for the corporate defendants, and an injunction against Locke, restraining him from disposing of corporate assets, or interfering with the affairs of same, etc. (Tr. 4–36; 36–70; 70 et seq.) After hearing, the Court issued the injunction and

appointed a Receiver for the Air Conditioning Corporation and the Plumbing Corporation. (Tr. 113). Later, the order appointing the Receiver was amended to include AAA Roofing Corporation, AAA Petroleum Corporation, and AAA Oil Corporation. (Tr. 127). Interventions by other parties, setting up claims against the corporations, were filed. (Tr. 130–170). The Receiver so appointed instituted two suits against N. S. Locke, and on September 22, 1947, recovered judgment against Locke for $136,977.00 on his subscription for preferred stock of AAA Air Conditioning & Manufacturing Corporation. (Exhibit 49); and on September 29th, 1947, recovered judgment against Locke in the aggregate sum of $156,454.62, covering corporate items found to have been appropriated by Locke or misapplied by him, as follows: $54,000.00, the value of the building and real estate appropriated from AAA Air Conditioning & Manufacturing Corporation; $77,206.70, recovered for AAA Roofing Corporation, representing a check for $25,000.00 payable to Lewis Locke; also two checks, one for $10,000.00 and the other for $25,000.00, payable to Mercantile National Bank and charged to Lewis Locke; and also cash items in the amount of $3,206.70; and $25,247.92, recovered for AAA Plumbing Corporation, representing portion of a check applied in payment of interest, and an obligation of Lotsie E. Locke. (Exhibit 48). Upon the basis of these suits, and the judgments obtained therein, the appellees interposed their plea of res adjudicata and estoppel."

■ Appellants having originally filed this suit as unsecured creditors of the corporations, seeking a receiver of the assets of such corporations as a trust fund, in our opinion elected to proceed against such trust fund for their relief. Since other creditors stand upon an equal basis on their claims to such trust fund, once the receiver was appointed, the cause or causes of action against Locke as stockholder, director, officer, etc., passed to the receiver for the benefit of all the creditors.

But appellants say that Locke used the corporate fiction of the corporations involved solely for his own benefit and as he saw fit; and therefore the corporation fiction should be disregarded and the transactions considered solely as the personal acts and responsibilities of Locke.

■ The question here to be decided is whether the two positions,—one asking a receiver for the corporations as entities based on unsecured claims, the other contending that such corporations are but the alter ego of Locke and, as such, their assets and liabilities are the personal assets and liabilities of Locke,—are inconsistent remedies requiring an election by appellants. If they are inconsistent, the appellants, having elected as to the one, abandoned the other.

"Election of remedies is the act of choosing between different modes of procedure or relief allowed by law on the same state of facts, such modes being termed coexisting remedies, the result of the election or choice being to preclude the party from resorting to the other remedy. In the language of recent authority, 'Election of remedies arises where a party has two or more inconsistent remedies, and chooses to exercise one of them; in such case he abandons his right to exercise the other remedy or remedies.' The election is not restricted to any class of remedies. But there must, of course, be more than one remedy available, and the remedies must be inconsistent so that the election of one is a repudiation of the others." 15 Tex.Jur. p. 820.

■ Appellants could not have secured a receiver in a suit for debt against Locke, personally, on an unsecured claim or debt; they had to recognize the corporate entity to justify the appointment of a receiver under the trust fund theory. 36 Tex.Jur. sec. 15. The receiver under the circumstances was entitled to the exclusive right to proceed against Locke for his liability to the corporation for his unpaid stock subscriptions, misapplication of funds, willful breach of duty, etc., if any. The proceeding here, in our opinion, is inconsistent with the contention that Locke and the corporation were the same; that is, that the corporation was Locke's alter ego.

■ The receiver, when appointed, became the representative of all the creditors in connection with the assets of the corpo-

ration. Shaw v. Borchers, Tex.Com.App., 46 S.W.2d 967; Herf & Frerichs Chemical Co. v. Brewster, 54 Tex.Civ. 217, 117 S.W. 880.

In Brenton & McKay v. Peck, 39 Tex. Civ.App. 224, 87 S.W. 898, 902, the court said:

"A receivership can never be properly granted at the instance of a general creditor of a corporation until the point has been reached in its affairs at which the trust-fund doctrine may be invoked by the creditors, and when that point is reached the statute applies. We understand the law to be that, in all cases in which a receiver of property is applied for, the showing must be made either that the applicant has an actual interest in the property, or a lien thereon, or else the property constitutes a fund out of which he is entitled to the satisfaction of his claim. Beach on Rec. § 7. This justifies the distinction whereby a general creditor under our statute may successfully apply for a receiver of the property of an insolvent corporation, whereas none but a lien creditor would be entitled to the relief as against a partnership or natural person. New Birmingham Iron & Land Co. v. Blevins, 12 Tex.Civ.App. 410, 34 S.W. 828; Cahn v. Johnson, 12 Tex.Civ. App. [304], 308, 33 S.W. 1000; Carter v. Hightower, 79 Tex. [135], 137, 15 S.W. 223; [San Antonio & G. S.] R. Co. v. Davis, Tex.Civ.App., 30 S.W. 693. The distinction is referable to the trust-fund doctrine, which means that whenever a corporation voluntarily ceases business, or is otherwise practically dissolved, either by actual insolvency or its imminent pendency, its property becomes at once a trust fund in the hands of its officers for the benefit of creditors of every character, as well as the stockholders of the defunct concern. Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Tex. [143], 156, 24 S. W. 16, 22 L.R.A. 802. Thus, when that point is reached in the affairs of a private corporation, the general creditor may maintain his bill for a receiver upon an otherwise proper showing; he being able to satisfy the general requirement that he has an actual interest in the fund. It is also true that when that point is reached (that is to say, when a corporation has become technically insolvent), no creditor can by legal process or contract secure an advantage over any other creditor which he did not theretofore have. * * * Whether the point of insolvency is left open, to be ascertained as any other fact, or whether it is arbitrarily fixed by the date of the proceedings brought for the purpose, is perhaps an open question. In line with this principle it is held in this state that a corporation cannot make a valid preferential deed of assignment, the act itself being one of insolvency."

See also Orr & Lindsley Shoe Co. v. Thompson, 89 Tex. 501, 35 S.W. 473; 11 Tex.Jur. p. 84, sec. 421.

There being no error in the trial court's judgment refusing appellants a personal judgment against N. S. Locke, it is therefore affirmed.