BRENTON & McKAY v. CHAS. B. PECK, RECEIVER, ET AL.

Decided April 28, 1905.

**1.—Receiver for Corporation—Grounds of Appointment—Insolvency.**

The mere failure of a corporation to meet its debts will not justify a finding of insolvency when the present ability to do so is shown; nor will its mere refusal to pay debts be ground for the appointment of a receiver for it, even with its consent.

**2.—Same—Threatened Execution Sale.**

Where a town lot and improvement corporation owned property in excess of its debts and was a going concern and an execution was levied on its entire real property to satisfy a judgment against it which it had taken no steps to pay, this afforded no ground for the appointment of a receiver for it at the instance of another creditor in order to prevent an apprehended, but not probable, sacrifice of its property at the execution sale, it appearing that the purpose was to prevent the sale under execution and that the corporation was making no sales of its property because the prevailing prices were low and it was holding for an expected advance.

**3.—Same—Lack of Cash.**

Under the conditions shown the judgment creditor could not, at the suit of another creditor without lien, be stayed from proceeding to execution merely because the debtor corporation had not the cash at command with which to meet its obligation.

**4.—Same—Trust Fund Doctrine—Creditor Without Lien—Statute.**

A receivership for a corporation can not be properly granted at the instance of a general creditor until the point of insolvency has been reached in its affairs at which the trust fund doctrine may be invoked, and then the statute applies. Rev. Stats., art. 1465 (3).

**5.—Same—Remand of Cause to Develop Facts as to Insolvency.**

Where the appointment by the trial court of a receiver for a corporation was on appeal held unauthorized because insolvency or imminent danger of insolvency was not shown, but the showing made as to the conduct. of the corporation's affairs and its failure to pay taxes, officers' salaries and past due debts, pointed to a state of things which the evidence did not conclusively explain, it is held that the cause should be remanded in order that the facts may be more fully developed.

**6.—Conclusions of Fact—Exceptions Below.**

Where the trial is without a jury and the judgment is excepted to, and the record on appeal contains a statement of facts, the appellant can assail the trial court's conclusions of fact, although no exception thereto was preserved. He would in no event be required to except to them where they are not filed until after the case has reached the Appellate Court.

Appeal from the District Court of Harris. Tried below before Hon. Norman G. Kittrell.

*Hamblen, Scott & Hamblen,* for appellants.

*Baker, Botts, Parker & Garwood,* for appellees.

The briefs of counsel in this case failed to reach the hands of the reporter.

GILL, ASSOCIATE JUSTICE.—Chas. B. Peck filed this suit January 2, 1905, alleging that he had been appointed receiver of the La Porte Wharf and Channel Company by an order of the United States Circuit Court sitting at Houston on August 22, 1904. That about December 20, 1904, the Improvement Company, a corporation, made and delivered to him, as such receiver, its obligation for the sum of $46,386.01, due and payable —— days thereafter, and that the obligation is past due and unpaid. That on the 19th day of September, 1904, Brenton & McKay recovered judgment against the Improvement Company in the District Court of Harris County for $10,977, and caused an execution to be issued thereon and levied upon all of the property of the Improvement Company. That the sheriff had advertised the property for sale, and if such sale should occur the property would be sacrificed, to the great loss and detriment of plaintiff. That the Improvement Company is insolvent, or in imminent danger of insolvency. He therefore prayed that the sale be enjoined; that a receiver be appointed to take charge of the affairs and properties of the Improvement Company, and that, on hearing, plaintiff have judgment for his debt, and that the property of the company be impounded and sold for the payment of his debt.

The bill was presented to the district judge and a temporary restraining order issued. The application for the appointment of a receiver was set down for hearing in chambers for January 5, 1905.

Brenton & McKay answered, excepting to the bill because it showed no equity which would justify the relief prayed for, and that it showed on its face that plaintiff's debt was unsecured and had not been reduced to judgment. It was also objected to upon other grounds. The truth of the allegations was controverted. The Improvement Company, though cited, failed to appear and resist the application.

On January 5, 1905, the court overruled the exceptions, and, after hearing evidence, appointed A. O. Blackwell receiver of the La Porte Improvement Company. Brenton & McKay have appealed from the order. Plaintiff withdrew his application for injunction, and the restraining order was dissolved January 30, 1905.

The following facts were disclosed upon the hearing: The La Porte Improvement Company of Texas was duly incorporated under the laws of this State for the purpose of "purchasing land and real property, to survey off, plat or subdivide the same into town lots or acreage subdivisions, to lay out and grade streets, alleys and thoroughfares adjacent to such property, and to construct drainage, sidewalks, etc., to make such property desirable for residence, business or manufacturing purposes; to improve, sell and dispose of same, and to do any other necessary thing in aiding the purpose of platting, subdividing and selling such property."

The company of which plaintiff was receiver, as alleged, was also a Texas corporation, its purpose being to dredge a ship channel and construct and maintain a wharf at the present site of the city of La Porte, on Galveston Bay. The two corporations were formed for the purpose of cooperating with each other in building up and developing a town and seaport at the present site of La Porte. The two corpora-

tions were formed by the same individuals, having the same interests in common in building said town and developing the harbor, and the officers of the two companies are identical.

In pursuance of the purpose for which the two companies were formed, the Channel Company began the construction of its wharves and docks at the town of La Porte, and undertook the construction of a ship channel from what is known as Galveston Channel, in the bay, to the wharves at La Porte. The Channel Company issued its securities, defaulted thereon, and the plaintiff was appointed receiver, as alleged.

The Improvement Company, in pursuance of its corporate purposes, acquired various and sundry tracts of land upon which the town of La Porte is now established, and immediately surrounding and adjoining such town. A part of it has been subdivided into about ten thousand town lots, and there is also about six hundred acres of land in the town yet undivided. Streets and alleys have been laid out and some of the lots have been improved.

In December, 1904, the La Porte Improvement Company had become indebted to the Channel Company and its receiver in the sum sued for, and on the —— day of December, 1904, executed its note for the sum as alleged. The due date thereof was as alleged in the petition. It was unsecured by any lien, and had not, at the time the receiver was appointed, been reduced to judgment.

Most of the lands of the Improvement Company were encumbered by vendor's liens amounting to about $70,000, but the company, in order to make sales and title when opportunity offered, had secured from the vendor the privilege of releasing each lot upon payment of a specified sum, the amount named in the testimony against lots on certain named streets being $25 per lot, the testimony showing that as to these lots the sum was nominal. Some of the lots had been improved and rented out. These had been released from the vendor's lien and were unincumbered. Among these were the lots on which the offices of the company were situated. The value of these unincumbered lots is not shown, nor is the total value of its property estimated by Blackwell, the manager and executive officer of the company, except by the general statement of the witness that it largely exceeds the Improvment Company's indebtedness.

The property of the Improvement Company exceeded in value its indebtedness, and, though its management had taken no steps toward paying the Brenton & McKay judgment, and for about two years had made no sales, and paid nothing on its indebtedness for want of cash, it was still a going concern, having offices at La Porte, an officer in charge of its affairs, and was actively conducting at said town a hotel and bathing establishment and park, owning its furniture and equipment. There was no proof that, if the property was sold under execution, it would not bring enough to discharge all the outstanding indebtedness. The only witness who testified admitted that there was no reason to hope that the property would bring more at receiver's sale than at execution sale, unless the receiver could induce someone to put up more funds, and hold the property for a year or more, until the operation of the

Dock and Channel Company, or some other uncertain event, ran up the value of the property.

The reason why the company was not pressing its real estate upon the market was because it was hoped that certain public improvements affecting that port, and then in prospect, would largely enhance the value of the property, and the company did not wish to sell at prevailing prices. Those who own a controlling interest in each concern, and direct the policies of each corporation, are desirous of holding the property of the Improvement Company until prices advance, or, at least, until time shall prove whether the expected will materialize from the causes to which they are prospectively ascribed. Brenton & McKay, by virtue of the levy of their execution, have now, upon all the real estate of the concern, a lien, subject to the vendor's lien above mentioned.

Pretermitting the questions made by the exceptions, and especially, whether one holding an unsecured claim can place the property of a corporation in the hands of a receiver upon allegation and proof of one or more of the statutory grounds, we shall determine this appeal upon the assignment assailing the sufficiency of the evidence.

Neither of the grounds upon which the prayer is predicated is established. The testimony of Blackwell, the general manager of the Improvement Company, its highest officer in the State, and presumably familiar with its financial condition, discloses no such state of affairs as is alleged. It is true the witness states that there has been no meeting of the directors in Texas in two years; that two years' taxes are due on the property, and have not been paid for lack of cash funds; that a floating indebtedness of the company amounting to about two thousand dollars is outstanding and unpaid for the same reason. But it is still a going concern under the active management of witness. It is operating the park, hotel and bathing pavilion, collecting rents on the improved property, and looking after and preserving the whole. It is still doing, in a small way, all that it ever did, but is not selling any property because it does not wish to do so at prevailing prices. It is not pretended that the unincumbered property will not be sufficient to discharge the Brenton & McKay judgment, or that the remainder will not sell for enough to satisfy all of the remaining outstanding indebtedness. The lots could not be sold in bulk under the execution, but must be sold separately. If the lots are worth more than the release price of each (and they are so under the testimony adduced), the ultimate collection of the receiver plaintiff's claim is not even endangered.

The purpose to delay a sale until things yet to come may enhance the Improvement Company's holdings is practically admitted, and the powers of a court of equity are invoked, not upon a reasonably satisfactory showing that the plaintiff will otherwise lose his debt, but in order that the defendant Improvement Company may not have its property subjected to the danger of sacrifice at public sale when it prefers to hold for higher prices.

Under the evidence adduced, it is not surprising that the defendant company submits with such complacency to a proceeding which is usually termed harsh and drastic, and which is generally denied except upon a clear showing of necessity. The trial court seems to have felt

constrained, under the provisions of the statute, to grant the plaintiff's prayer, because the sale of all the property under the execution would render the company insolvent. Such a result would, of course, follow, if there were no bidders at the sale, but no such prospect threatens, and the fear of a sacrifice is not shown to be more than a baseless apprehension. A company with assets greatly in excess of its liabilities, with prospects of great enhancement in value, is not likely to permit the apprehended sacrifice.

Corporations must pay their debts as other debtors, or else suffer execution as others do. And to command a diligent creditor of a solvent and going concern to stay his hand until the happening of some hoped-for contingency shall save the company from loss would be inexcusable.

Because no reason is shown requiring or justifying the appointment, the order is annulled, the bill dismissed, and the property is ordered to be returned to the possession of the company.

*Reversed and dismissed.*

### ON MOTION FOR REHEARING.

Counsel for appellees have filed a motion for rehearing which is, in the main, a dignified and able attack upon the judgment of this court and the reasons upon which it is based. The objections are: First.— That the evidence is ample to sustain the finding of the trial court that the Improvement Company was either insolvent or in imminent danger of insolvency. Second.—That, even if this is not true, this court erred in rendering judgment, because the evidence upon those issues is in no sense conclusive.

In the main opinion we rested the reversal entirely upon the view we took of the facts. We deem it proper, in disposing of this motion, to enter more minutely into the evidence offered as a basis for the appointment of a receiver, and this we will do further on. In reaching our conclusion we were not unmindful of the tests of insolvency as laid down in the books. We had in mind the rule that a mere excess of assets over liabilities would not justify the holding that a concern was solvent if it, in fact, had outstanding liabilities which it was unable to meet in the usual course of its business. (Munson v. Ellis, 58 Mich., 331; Bell v. Ellis, 33 Cal., 620.) Nor had we overlooked the rule, on the other hand, that, even if it should be made to appear that a concern's assets were less in value than its liabilities, if its business should be suddenly interrupted and its assets placed on the market, yet, if it was a going concern, carrying out its corporate purposes and meeting its liabilities as they fell due, a finding of insolvency would not be justified. (Bell v. Ellis, supra, and authorities cited.) We understood that neither the one nor the other is the exclusive test.

When a person is unable to pay his debts he is insolvent. (Cunningham v. Norton, 125 U. S., 77; Munson v. Ellis, supra.) As said in Brown v. Harbeck (9 N. Y., 594), "a corporation, like an individual, is said to be insolvent when it is not able to pay its debts. Insolvency means a general inability to answer in the course of business the debts existing and capable of being enforced." In all the cases which we

have had occasion to examine a finding of insolvency on inability to meet obligations has been upheld, but in none has it been declared that a mere failure to meet them has justified the finding where the present ability to do so was shown.

In this view of the law, which is appellee's view, and about which no question is made, we will further examine the facts. We found that the assets of the Improvement Company exceeded its liabilities. This finding is vigorously assailed as utterly without support in the evidence. Yet the appellees alleged it, and the sole witness adduced so testified. It may not be fair to say that either the allegation or the statement of the witness is unqualified. The modifying allegation is as follows: "Plaintiff alleges, upon information and belief, that the property levied on by the sheriff . . . is worth approximately $50,000 or more, and that, if the property is permitted to be sold for the payment of the debt of Brenton & McKay, it will be ruthlessly sacrificed, to the great loss and detriment of the plaintiff and other creditors of the Improvement Company."

The only witness who testified was A. O. Blackwell. He had been connected with the two companies from their inception. He had been the manager of each company at the same time, and at the date of these proceedings, and for a long time previous, had been the general manager and chief executive officer of the Improvement Company.

He stated, in substance, that the liabilities of the company were about as stated in the main opinion, and that all the indebtedness was past due. He stated that the assets were more than sufficient to pay the debts. There is not an intimation that the holders of the vendor's-lien notes were doubtful of their security, or had taken any steps to press their debts. More than a dozen of the city lots had been released from this lien. They were improved and unincumbered save for the Brenton & McKay execution. The value of this released property is not even intimated; nor does the witness estimate the value of the ten thousand city lots and 600 acres of acreage property. He is silent as to what proportion of the purchase money was paid in cash and as to whether the property has increased or diminished in value since the company's purchase.

He does not pretend to have tried to sell a foot of the property within the twelve months preceding the application for receivership, and states the company was unwilling to sell at prevailing prices, but was open for business, and would sell now at a suitable price. That the company was thus left without cash is undisputed, and that, therefore, its current expenses and other debts were neither paid nor reduced is, of course, true. The value of the property, treated as acreage property, is not given, though the total of the company's holding is shown to be about 1,700 acres, 1,100 of which has been subdivided into city lots and some of it improved.

It is true, the witness stated there was small demand for the lots at retail, and that it would take time and effort to sell them to advantage in that way. He admitted that, at forced sale, the sheriff could procure as good a price as the receiver. He also stated that the only hope of selling the property for a fair price was for the receiver or someone to find some means of inducing purchasers to believe in the prospects of

La Porte as a city, and that this would take considerable time. He also stated that the property would bring a better price in bulk than at retail.

We are of opinion that the witness's testimony, as a whole, shows not that the company could not have sold a part of its property and paid its current indebtedness, but that its officials chose to make no effort to sell at prevailing prices. As to whether the company could sell and pay the evidence is silent. There is an utter absence of evidence that the officials of the Improvement Company could not sell enough of their real estate to discharge the Brenton & McKay judgment. The record contains no more than an intimation to that effect. It merely shows that they did not, and that they did not try. It is true, the witness states that, if all their property is sold under the execution, there will be nothing left for the company to do business on, and that, therefore, the company will be insolvent. Therefore, it is in imminent danger of insolvency.

We stated in the main opinion that this was not shown, and that the charge that the property would be sacrificed, and plaintiff's debt left unpaid, was not shown to be other than a baseless apprehension. This expression is especially complained of. We do not mean to say the apprehension is not very real. What we still think is that the plaintiff, with the manager of the company on the stand, his honesty unquestioned, his willingness to state the truth apparent and his knowledge of the actual situation equally so, has failed to elicit from him in any affirmative form any fact which sustains their allegations.

Appellees' counsel claim the witness states that unless a change in local conditions is in some way brought about the property will be valuable only for grazing or farming lands, and intimates that though the record is silent as to their value as such the court should judicially know that their value is insignificant. We reply the members of this court have no information on the subject, and it is a subject that comes rather within the province of the expert witness than of judicial knowledge.

But the further contention is that the company had suspended business and was no longer a going concern. We do not think this proposition can be upheld on any phase of the evidence. The corporation was a land company, its substantial power and purposes being to buy, handle, hold and sell real estate with the incidental power to do any lawful thing appropriate to the furtherance of those ends. For a long time prior to this application the company was a large holder of real estate. It had bought it, and in so doing it had exercised one phase of its corporate power. It subdivided it into lots, constructed streets, alleys and sidewalks and improved a part of it by the construction of buildings, in this way exercising another. It decided to refuse to sell at prevailing prices, to preserve what it had, collect its rents and hold till a later time. Thus it exercised its right to hold and handle. If solvent, could any one deny its right to refuse to sell at unsatisfactory prices? It also had the right of any other debtor of adopting the policy of holding until forced by its creditors to sell.

A mere refusal to pay debts will not authorize a receivership. If, then, a creditor of a solvent concern (which has purposely refused to

sell its property at prevailing prices and thus meet its obligations) chooses to proceed by judgment and execution, certainly he ought not to be stayed at the suit of another creditor merely because the defendant concern has not the *cash* to meet its obligations. If such were the case, a real estate corporation, with holdings worth millions, with debts paltry in amount as compared to its holdings, could be placed in the hands of a receiver and the process of creditors arrested merely because the company had put all its cash into real estate and chose to refuse to sell any at prevailing prices. We feel sure appellees would not carry their contention to such a length. This is the view we took of the case as made by the testimony of Blackwell.

Even under the Texas statute authorizing the appointment of a receiver for a corporation when insolvent, or in imminent danger of insolvency (Rev. Stats., art. 1465), the applicant must place himself, under the general rules of equity, in an attitude to ask the relief. (Investment Company v. Crawford, 45 S. W. Rep., 740.) A receivership can never be properly granted at the instance of a general creditor of a corporation until the point has been reached in its affairs at which the trust fund doctrine may be invoked by the creditors, and when that point is reached the statute applies.

We understand the law to be that, in all cases in which a receiver of property is applied for, the showing must be made either that the applicant has an actual interest in the property or a lien thereon, or else the property constitutes a fund out of which he is entitled to the satisfaction of his claim. (Beach on Rec., sec. 7.) This justifies the distinction whereby a general creditor under our statute may successfully apply for a receiver of the property of an insolvent corporation, whereas none but a lien creditor would be entitled to the relief as against a partnership or natural person. (New Brittingham Co. v. Blevins, 12 Texas Civ. App., 410; Cahn v. Johnson, id., 308; Carter v. Hightower, 79 Texas, 137; Railway Co. v. Davis, 30 S. W. Rep., 693.)

The distinction is referable to the trust fund doctrine, which means that, whenever a corporation voluntarily ceases business, or is otherwise practically dissolved, either by actual insolvency or its imminent pendency, its property becomes at once a trust fund in the hands of its officers for the benefit of creditors of every character, as well as the stockholders of the defunct concern. (Hardware Co. v. Manufacturing Co., 86 Texas, 156.) Thus, when that point is reached in the affairs of a private corporation, the general creditor may maintain his bill for a receiver upon an otherwise proper showing, he being able to satisfy the general requirement that he has an actual interest in the property. It is also true that, when that point is reached—that is to say, when a corporation has become technically insolvent—no creditor can, by legal process or contract, secure an advantage over any other creditor which he did not theretofore have. (Hardware Co. v. Manufacturing Co., supra.) Whether the point of insolvency is left open to be ascertained as any other fact, or whether it is arbitrarily fixed by the date of the proceedings brought for the purpose, is perhaps an open question.

In line with this principle, it is held in this State that a corporation can not make a valid preferential deed of assignment, the act itself being one of insolvency. (Lyons Hardware Co. v. Stove Co., 86 Texas,

163.) These principles are mentioned in this connection to show the extent to which the proof must go in order to justify the relief here asked.

Can it be justly said, in the light of the facts, that such a point is shown to have been reached in the history of this concern? We think not. It follows, therefore, that the judgment ought not to be affirmed. We have overruled the assignment involving the proposition that, in this State, only a lien creditor is entitled to a receivership as against a corporation. The reason advanced in support of the proposition is that the general creditor has no interest in the property itself, and the general principles governing the proceedings require the presence in the applicant of such an interest. The answer is, as above indicated, that when a receivership of a corporation is applied for by a creditor, on the ground of insolvency or imminent danger thereof, he alleges a situation which gives him an interest in the fund itself. The cases cited by appellants do not sustain their proposition.

The case of New Birmingham Iron Co. v. Blevins (12 Texas Civ. App., 410) does not sustain him, because, at page 420, the court distinctly declares that the case made does not fall within either of the first four cases enumerated in the statute, which include the case of insolvency. That case was decided under the general principles of equity and the prayer denied. In all the other cases cited the suit was either against individuals or partnerships, or else were applications by stockholders. On the other hand, the cases of Railway v. Davis (30 S. W. Rep., 693) and Lyons Hardware Co. v. Perry Stove Co. (86 Texas, 143) support our conclusion.

We have concluded, however, that our order dismissing the bill should be set aside. The showing made as to the conduct of the company's affairs in the year preceding the application, its failure to pay its taxes, its officers' salaries, and other past due debts, point to a state of affairs which the evidence does not conclusively explain. The facts are not fully developed. We therefore change our former order, and remand the cause for another hearing, at which, if the alleged conditions actually exist, it can be made clearly and distinctly to appear as the law requires. (Beach on Rec., sec. 47.)

We desire to correct an erroneous impression under which appellant's counsel seem to labor as to the meaning of certain portions of the main opinion. We stated that a purpose to delay the sale in the hope of better values was practically admitted. We adhere to the statement. It was admitted by counsel on oral argument, and shown by the testimony of the witness. But it does not follow that the purpose was reprehensible. If their theory is correct, that the concern is in a condition of impending insolvency, and a forced sale would sacrifice the property, and, incidentally, the rights of creditors, the purpose to secure a reasonable delay is laudable, and the court would decree it. But, unless those conditions exist in fact, and not in mere apprehension, the delay would not be justified. The latter part of the paragraph of the main opinion in which the expression occurs is not justified by the facts, nor was it the purpose of the court to impugn the motive of the receiver plaintiff. It is true, however, that to grant the relief in the absence of a showing of necessity in behalf of plaintiff, would enable the Improve-

ment Company to escape the prompt enforcement of the execution and secure through the plaintiff what it could not have secured for itself. In this view of the case we repeat we are not surprised that the defendant company did not resist the application.

Appellees also object to our statement that the Improvement Company was holding for better prices and improved conditions from the prospective work of the Channel Company. We based our statement upon the statement of the witness that negotiations were pending, looking to the reorganization of that concern by parties heavily interested in both.

We stated in the outset that counsel for appellees had filed a motion for rehearing distinguished in the main for dignity and ability. We used the qualifying phrase "in the main," because our comment is not applicable to the entire document. At page 46 counsel have seen fit to indulge in a general indictment of the State, its people, its public officials and its juries, for their alleged hostility to corporations and foreign capital. It purports to be part of a reply to a part of appellant's brief, but, however mistaken may have been either the premises or conclusions of appellant, they contained nothing to justify the language used. It is without basis in the record and without excuse in the history of the case.

The cause has not come within the province of any other officials of the State except the members of this court, and counsel seem to have been careful, by inference at least, not to include us in the sweeping charge. We were first inclined to let the matter pass unnoticed, but we are unwilling to allow it to go into the records of this court unrebuked. We pass it with this expression of our disapproval. However clearly it may express the sentiment of counsel, the language had no proper place in the argument.

For the reasons given the motion is granted to the extent indicated, and the cause remanded to the trial court.

In connection with the motion for rehearing, counsel for appellees prayed for certiorari to bring to this court the trial court's conclusions of fact and law. The only reason offered for incorporating the conclusions in the record is that they contain a specific finding of insolvency, and that, because appellant did not except to them in the trial court, they can not question it here. The judgment having been excepted to, and the record containing a statement of facts, appellant could assail them though no other exception had been preserved. (Wilkins v. Burns, 25 S. W. Rep., 431; Voight v. Mackle, 71 Texas, 80; Smith v. Abadie, 29 Texas Civ. App., 60, 67 S. W. Rep., 1077 (in which the exact point is decided); Thompson v. State, 23 Texas Civ. App., 373.) But the application also shows that the conclusions were not filed until after the appeal had reached this court. So in no event could appellants be required to except to them when they had not become a part of the record. In disposing of the appeal we have treated the judgment as embodying a finding of insolvency. It is therefore apparent that no reason exists for the certiorari. The motion, therefore, is overruled.

*Motion granted and cause remanded. Overruled as to certiorari.*