## NICHOLSON et al. v. LIEBER.

(Court of Civil Appeals of Texas. San Antonio. Jan. 22, 1913. On Motion for Rehearing, Feb. 19, 1913.)

1. VENDOR AND PURCHASER (§ 140*) — CONTRACTS—ABSTRACT OF TITLE.

A vendor contracting to furnish an abstract showing a good title for examination by the purchaser or his attorney must show a good record title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 262–264; Dec. Dig. § 140.*]

2. ABSTRACTS OF TITLE (§ 1*)—NATURE AND REQUISITES. ‧ •

An abstract of title is a memorandum or concise statement of the conveyances and incumbrances which appear on the public records, affecting title to real estate.

[Ed. Note.—For other cases, see Abstracts of Title, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 1, pp. 47, 48.]

3. VENDOR AND PURCHASER (§ 140*)—CONTRACTS—ABSTRACT OF TITLE.

A contract of sale and purchase of real estate which provides that the grantor shall furnish an abstract of title brought down to date; that the grantee shall have 30 days for examination thereof; that, if any defects are found, the grantee or his attorney shall point the same out to the grantor who shall have a reasonable time to cure them, and if they cannot be cured, and good title furnished, partial payments made shall be returned, and if good title is furnished, and the grantee fails to perform, the partial payments shall be forfeited as liquidated damages, requires the vendor to furnish an abstract showing good record title, and a title by limitation is insufficient.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 262–264; Dec. Dig. § 140.*]

4. CONTRACTS (§ 143*) — CONSTRUCTION — INTENTION OF PARTIES.

A contract must be construed as a whole, and the court may not nullify any part thereof.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 723, 743; Dec. Dig. § 143.*]

**5. VENDOR AND PURCHASER (§ 143*) — CONTRACTS—FAILURE TO SHOW RECORD TITLE—WAIVER.**

A vendor contracting to furnish an abstract showing good record title furnished an abstract to the purchaser, who pointed out objections thereto without objecting to the fact that the vendor's title was by limitation. The purchaser for over 40 days was in practical control of the premises, made contracts with reference thereto, and entered into negotiations looking to a sale thereof at a profit, and made payments on improvements being made on the premises. *Held*, that the purchaser, required by the contract to point out defects in the title, waived the right to object to the title on the ground that it was one by limitation, and not by record.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 267–270, 311; Dec. Dig. § 143.*]

**6. VENDOR AND PURCHASER (§ 144*)—CONTRACTS—TITLE — DEFECTS — RIGHT TO REMEDY.**

A contract for the sale of real estate, which provides that the vendor shall furnish an abstract of title, that the purchaser shall have 30 days for examination thereof, and shall point out defects therein to the vendor, who shall then have a reasonable time to cure them, gives to the vendor a reasonable time to perfect his title by limitation into a good record title, and the purchaser, failing to give reasonable time, breaches the contract, and may not recover partial payments made, on the theory that the vendor may not perfect the title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 271–275; Dec. Dig. § 144.*]

*On Motion for Rehearing.*

**7. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—QUESTIONS RAISED—SUFFICIENCY OF EVIDENCE.**

Where the court filed a statement of facts and conclusions of fact, an assignment of error by defendant that the court erred in rendering judgment for plaintiff because the undisputed evidence showed a specified fact, followed by a proposition stating facts on which estoppel was predicated, raised the question of the sufficiency of the evidence to support the judgment, though defendant did not except to the conclusions of fact.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Action by J. H. Lieber against B. F. Nicholson and others. From a judgment for plaintiff for a specified sum and for defendants for a specified sum, defendants appeal. Reversed and rendered in part, and affirmed in part.

Jno. M. Rowland and R. P. Ingrum, both of San Antonio, for appellants. Swearingen & Tayloe, of San Antonio, for appellee.

TALIAFERRO, J. This suit was filed by Jas. H. Lieber to recover from B. F. Nicholson, W. J. Sames, and J. R. Moore earnest money paid upon a contract to sell real estate, and certain other sums of money claimed to have become due to the plaintiff by reason of the contracts between the parties covering said sale. The original contract of sale was dated March 1, 1910. It recited

the receipt of $500 and the agreement to pay $250 on or before March 20, 1910. The further portion of the contract material to this case reads as follows: "Grantors are to furnish abstract of title brought down to date as soon as possible, and grantee is to have thirty days from date of delivery for examination of said abstract. It any defects in title are found, same are to be pointed out to grantors by grantee, or his attorney, and grantors are to have a reasonable time to cure said defects. If this cannot be done and good title furnished, the above-mentioned $500.00 is to be returned to grantee and the said payment of $250.00 to be made March 20th if already paid, is to be returned and this contract be of no further force or effect. But if good title is furnished, and grantee fails or refuses to go forward with closing the deal as in all conditions fully set forth, the $500.-00 earnest money this day paid and the $250.-00 payment to be made March 20, 1910 is to be forfeited as and for liquidated damages."

At the time this contract was made, certain improvements upon the property were being erected, the plans and specifications for which Lieber had inspected and approved. A portion of the improvement was to be paid for by the defendant and the balance by the plaintiff. Although the defendants were by the contract required to "watch after" the construction of the improvements, plaintiff Lieber, at least in part, directed the affairs and had practical possession and control thereof until May 26, 1910, the day upon which the trade was finally repudiated by him. Between March 1 and May 26, 1910, Lieber Bros., a firm of plumbers and electricians, of which firm plaintiff was a member, did certain work and supplied certain plumbing and electrical accessories to the building aggregating $526.70. Of this sum they claimed $195 was done under the original contract with Fincham, and was allowed to Lieber upon this contract for the building, and the balance was work and material necessary in the proper construction of the building. Plaintiff claimed that this was done with the consent and approval of the defendants, and they attempted by filing affidavits and accounts to make same a Mechanic's and Supply Man's Lien on the property. The account was assigned to plaintiff Lieber, and was included in this action. On March 9, 1910, the defendants delivered to plaintiff an abstract of title, which was placed by plaintiff with his attorneys for examination. On April 1, 1910, the local lodge of the Woodmen of the World proposed to plaintiff, Lieber, to rent a portion of the house then in course of construction. To meet the proposed tenant's requirements, it was necessary to alter the plans and specifications, and make certain additions thereto. These changes it was ascertained would cost $620 additional. Plaintiff, Lieber, executed

the lease to the Woodmen of the World, and also made with the contractor an agreement to make the necessary alterations and additions to the plans and specifications, and the defendants were requested by him to express their agreement to said lease and changes of plans. This they did by a supplemental contract with plaintiff embodying this new condition, which said contract contains the following language: "It is, however, distinctly understood and agreed that, in order to place the premises above described in a condition acceptable to the said lodge, it has become necessary for the said James H. Lieber to enter into a contract for the erection of certain improvements at an agreed expense of $620.00, with the contractor, C. T. Fincham, and it is understood that should, upon examination of the abstract of title, it be found that the title to said property failed, or was not such as provided for in said contract of purchase, and on such account said purchase not be consummated, then, in such event, the said Nicholson, Sames and Moore agree to pay said expense of $620.00; but should the said James H. Lieber make failure or default in complying with the terms and conditions of said purchase contract, and thereby surrender and forfeit the earnest money of $750.00 on said contract, it is further distinctly understood and agreed that the said James H. Lieber shall be liable unto the said Nicholson, Sames, and Moore for an additional $320.00 as liquidated damages by reason of such default."

On April 8, 1910, plaintiff, Lieber, requested defendants to grant him one month additional time in which to present his objections to the title. This request was refused, and on April 9th, 31 days after the abstract was received by him, plaintiff, Lieber, wrote and delivered to defendants the following letter: "San Antonio, Texas, April 9, 1910. Mr. B. F. Nicholson, San Antonio, Texas—Dear Sir: Reference abstract for the property which is under contract of purchase between you and your associates and myself, being lot No. 5, new city block No. 122, on N. Flores street, San Antonio, Texas, beg to quote from letter of our attorneys with reference to title as follows: 'There is a vendor's lien note for about $4,200.00 in favor of Mary E. Jones, which has been transferred by written instrument to D. K. Furnish, guardian. This note has also been transferred by the guardian, D. K. Furnish, to Mr. Collat. There is no record showing that Mr. Furnish is the guardian of the minor, and there is no record of his authority either to buy the note for the minor, or to sell it. These records should be put in the abstract. Furthermore the lien is still in existence, according to the records as shown by the abstract, and is still a live lien against the property. In addition to this, Mr. Collat has a recorded deed of trust in his favor for $9,000.00, which has not been released. I

presume the $4,200.00 note was absorbed as a part of the $9,000.00 loan, but the record does not show this. The $4,200.00 note should be released, or an instrument put of record showing that it was absorbed by the $9,000.00 loan.' Kindly give these matters attention at your convenience and furnish me with the necessary papers in conformity with the above recommendations. Respectfully, Jas. H. Lieber." At the time this letter was written the plaintiff was fully advised that, because of certain lapses in the record title, defendants had only a title by limitation, and he had also been advised by his attorneys that the limitation title, as such, was good. The defects in the title pointed out by this letter were promptly cured by the defendants. The plaintiff continued in possession of the property directing the work thereon until May 26, 1910, when he positively declined to accept the property and delivered to the defendants a letter received by him from his attorneys, which is as follows: "San Antonio, Texas, May 26, 1910. Mr. J. H. Lieber, City—Dear Sir: We examined abstract No. 12,059, to lot in city block 122, on North Flores street, San Antonio, Texas, made by Texas Title Co., said abstract containing pages numbered 1 to 44; also the supplement brought down to the 7th day of March, 1910, by the San Antonio Abstract Company, their supplement being numbered 1934/2143, containing pages numbered 45 to 66, inclusive. We find that Mr. Nicholson's title does not connect with the sovereignty of the soil. We find further that the power of attorney given by Bettie Morris to Sol A. Morris did not authorize Sol A. Morris to mortgage her interest in the property. The abstract shows that her interest was sold under the mortgage made by Sol A. Morris under that power of attorney for her. As the power of attorney gave no such authority, the title, so far as her interest is concerned, failed. We find the entire title subject to a deed of trust in favor of M. L. Collat, M. W. Terrell being trustee. From recitals in several of the instruments, as well as statements made to us, and according to our general information, this property has been in the possession of Messrs. Nicholson et al. and their grantors for over fifty years, under claim of ownership, and we believe beyond question, their possession of the property cannot be interfered with by any adverse claimants. However, according to the decisions of our Court of Appeals, a title by limitation, which this is, cannot be construed as a good title, or a record title, and a prospective purchaser could not be required to accept a limitation title. In view of the decisions of the Court of Appeals, which have been concurred in by our Supreme Court, we feel it our duty to make this statement, notwithstanding we believe that Messrs. Nicholson et al., are the actual owners of the property, and that when you acquire it from

them you could hold it against the world. It is your privilege to waive the objection to a limitation title, or to reject the title. In our former letter about this abstract, we mentioned three other objections or omissions, which the abstract has been amended to show and completely heal. Very truly yours, Swearingen & Tayloe."

The case was tried by the court without a jury, and judgment was rendered for plaintiff for $500 earnest money, the $250 paid March 19th, $320 paid by virtue of contract dated April 1st, and $195 for work and supplies set out in account of the Lieber Bros. against defendants. The balance of the Lieber Bros.' account was denied and the mechanic's lien was also denied. For the defendants the court also rendered judgment against the plaintiff for $145 for loss of rent by the defendants "because of the negligence of said plaintiff and his delay in rejecting the title."

The pleadings and evidence in this case present three questions for the determination of this court: First. Was the plaintiff under the contracts authorized to insist that he be furnished with a good record title and to reject a title good only by limitation? Secondly. Is the plaintiff, under said contracts and by his actions in the premises, estopped from now denying that he agreed to accept title by limitation? Thirdly. Did the appellee comply with the terms of his contract in such manner as to entitle him to declare a forfeiture against the appellants?

[1] The trial court, in its conclusions of law, answered the first question in the affirmative, and the correctness of that conclusion is no longer an open question in this state. It has been settled by a long line of decisions that, where in a contract for the sale of real estate the vendor agrees to furnish an abstract of the title to be examined by the vendee or his attorney and that a good title shall be shown, such language must be construed to mean a "record title."

[2, 3] An abstract of title is defined to be "a memorandum or concise statement of the conveyances and incumbrances which appear on the public records affecting the title to real property." 1 Cent. Dig. p. 213. In requiring and in agreeing to give such an evidence of title, it must be conceded that the parties were contracting with reference to a matter which they considered important to the transaction. This is forcefully expressed by Mr. Justice Neill in rendering the opinion in Bowles v. Umberson, 101 S. W. 844: "There must have been some purpose in requiring the plaintiffs to furnish the defendant 'a complete abstract of title to the said land.' We need not grope in the dark to discover it; for it is obvious, from the very nature of the contract, as well as from the face of the written agreement, it was to enable the defendant to ascertain from an examination of it whether plain-

tiffs' title to the premises was good. 'Title' simply means 'ownership.' One who claims ownership in land and agrees to furnish another who contemplates buying from him a complete abstract of title to it does so for the purpose of showing thereby that he is the owner, and can confer by sale title or ownership in him who desires to buy. The very fact that the one who desires to sell agrees to furnish the one who wants to purchase an abstract of title indicates that the title under which he claims is of such character that a complete abstract can be made of it, and that it is not such that must appear outside of such records and instruments as abstracts of title are made from, such, for instance, as title by limitation, of which there can be no record or paper. The contract itself stipulates that 'the parties of the first part agree to furnish a complete abstract of title * * * in ample time for the party of the second part to have same examined within 30 days from the date hereof, and if said title is found to be good then they agree,' etc. The obvious meaning of the agreement is that the title must be 'found good' before either of the parties are required to go a step farther in the transaction, or either can acquire any rights, or incur any liability under the agreement. By or through what means is the title to be 'found good'? Clearly, by means of the 'abstract of title to be furnished in ample time for the party of the second part to have the same examined within 30 days from the date of the agreement.'" McLaughlin v. Brown, 126 S. W. 292; Hamburger v. Thomas, 103 Tex. 280, 126 S. W. 561; Stillman v. Canales, 25 Tex. 313, 78 Am. Dec. 530; Bowles v. Umberson, supra, and cases there cited. Appellants in this case agreed to furnish appellee an "abstract of the title brought down to date" and that appellee should have 30 days time in which to examine the abstract. If any defects were found, they were to be pointed out by the purchaser or his attorney. This language cannot fairly be construed to mean anything but that the appellee was to be furnished a good record title to the land within a reasonable time after he indicated the defects in the record which he considered material to make the title good. To ascertain those defects the contract gave him 30 days from the date the abstract was delivered to him, and then it was his duty to point them out to the appellants, and give them a reasonable time to cure them. What was the meaning of that portion of the contract? It can no more be presumed that the limitation upon the time in which appellee should ascertain and point out the defects was meaningless than it can be presumed that the appellee had agreed to accept a title not shown by the record to be good. Nor can the mode of expression in the contract be taken to mean that the purchaser should exercise his discretion as to the time the defects should be pointed out.

It was clearly the intent of the parties that the purchaser should within 30 days ascertain the defects in the title, if any, and at the end of that time point them out for correction.

[4] A contract must be construed as a whole, and the rights of both parties must be made level. The appellee under this contract owed the duty to appellees to exercise the utmost good faith in his dealings and to advise them of all the objections he had to their title in the manner and at the time provided by the contract. He agreed with them that 30 days was a sufficient time within which to discover these defects, and he agreed that at the end of that time he would point them out. We have no more right to nullify that portion of the contract than we would have to change the purchase price or the terms of sale. That clause of the contract gave the appellants a valuable right and one which they had the right to insist upon.

[5] The appellee recognized that right when on the 8th day of April, 1910, he requested appellants to extend the time; and appellants emphasized their intention to enforce the right by refusing the request for extension. Thereupon the appellee on the following day wrote a letter, and presented to appellants his objections to the title. It is undisputed that, when he did this, he had full knowledge that there were lapses in the record which rendered appellants' title good only by limitation; and yet he made no reference to those defects in his letter, but pointed out other defects which appellants immediately cured. Appellee explains this by saying he did not understand the meaning of limitation. But that was not the fault of appellants. He had 30 days in which to learn the meaning, and no act of appellants is complained of by him as preventing him from learning. It is also evident that appellee was in practical possession and control of the premises for 47 days after he wrote his letter pointing out the defects before he finally concluded to reject the title and so notified the appellants. During those 47 days he had made contracts with reference to the property, more than once entered into negotiations looking to the sale of the property at a profit to himself, and had made payments upon the improvements being made on the premises. Such conduct is not consistent with absolute good faith, and was not a compliance with the contract between the parties. Appellee had the right to reject any title that was not shown by he record to be good and marketable and he had the right to reject a title good only by limitation. Not because a title by limitation is a bad title, but because, under his contract, he was not required to accept such a title. But, standing upon his contract, he cannot complain if he must fall by his contract. It was his duty to ascertain the defects in the record title, as shown by the abstract, within 30 days from March 9, 1910, and then to point them out to and give the seller an opportunity to cure them. He did so, and ignored the defects which rendered the title good by limitation only. Following that, he acted towards the appellants and toward the property in a manner to clearly indicate that he had waived the defects making the title one by limitation, and he cannot now be heard to say that such was not his meaning. The appellants believing that the land was sold to appellee were deprived of the right to lease or sell the property, and more than once declined to consider favorable opportunities to rent the buildings. The testimony of B. F. Nicholson, one of defendants, which no effort was made to contradict, is as follows: "During the time that Mr. Lieber was under contract to buy the building and up to the 31st day of May, 1910, I did not make any attempt to rent the lower floors of the building. I had a number of applications to rent the lower floors, but turned them down, and the applications were from favorable renters, such as would have been advantageous to enter into contract with. I did not go into details as to price, but simply told them I had sold the property." By his failure to give a full statement of the objection to the title at the time provided in the contract and by his conduct thereafter, prior to the time he finally rejected the title, appellee is estopped from now urging other objections that he should have urged on April 9, 1910. "Having been silent when it was his duty to speak, he cannot now speak when it is his duty to be silent." Burleson v. Burleson, 28 Tex. 416; Lewis v. Alexander, 51 Tex. 587; Mayer v. Ramsey, 46 Tex. 375; 16 Cyc. pp. 680, 681, 738–742, and cases there cited; Love v. Barber, 17 Tex. 317; Weinstein v. Bank, 69 Tex. 38, 6 S. W. 171, 5 Am. St. Rep. 23; Bigelow on Estoppel, 558 et seq., 584 et seq.

[6] But, if it were admitted that appellee was not bound by the contract to ascertain the defects in the title and to point them all out at the end of that time, still he could not recover in this cause. It cannot be denied that when he did point them out on May 26, 1910, and refused to accept the title because of defects apparent of record, which reduced the title to one of limitation, the appellant was entitled to a reasonable time to cure such defect. A title by limitation can be perfected into a record title by either one of two methods: By proper releases or deeds from all adverse claimants, or by suit and final adjudication between all claimants in a court of competent jurisdiction. By either course it might have been possible for appellants to have perfected their title within a reasonable time. If they had done so, they could have established and have been able to tender to appellee the very title he demanded—a record title. But appellants were not offered or allowed a reasonable time to cure such defects, nor requested to do so. Ap-

pellee does not contend that appellants knew of his intention to reject the title before May 26th. In fact, he says he himself did not know, but that he would finally accept the property. The only evidence in the record upon the question of the time allowed appellants to cure the title after May 26th is that of the plaintiff and that of P. H. Swearingen, Esq., appellee's attorney. Mr. Swearingen said: "The rejection of this title is contained in the letter of May 26th, in which I told Lieber to exercise his own choice. He could take the property, or not take it. I did not reject the title at all. Mr. Lieber rejected it. Yes; he rejected it without giving them any opportunity to meet the last objections. He simply rejected the title absolutely." Mr. Lieber testified: "I talked. to Mr. Nicholson about it, and told him I would not take it after I talked with my attorneys about what a limitation title was. I just had had an experience with a limitation title in a piece of property in which I was interested in disposing of it, and the parties would not take it because it was a limitation title, and caused me considerable loss because of the fact that it was a limitation title, and, after I had had an experience of that kind, I could 'not afford to accept a title I could not sell.. Therefore, I absolutely refused to accept the title." From any viewpoint this was a violation of the contract by Lieber, and he should not have been allowed to recover in the case.

The judgment of the lower court, in so far as the plaintiff was permitted to recover against the defendants, is reversed, and here rendered for the appellants. The judgment in favor of the appellants against the appellee for $145 rents and the judgment denying the mechanic's lien on the property are affirmed, and all costs of both courts are here adjudged against the appellee.

### On Motion for Rehearing.

[7] Appellee says this court erred in reversing this case, because appellant did not except to the conclusions of fact filed by the trial court. In this case, both a statement of facts and conclusions of fact by the court were filed, and by a sufficient assignment of errors, followed by appropriate propositions, appellant raises the question as to sufficiency of the evidence to support the judgment of the court and urges the conduct of appellee as .an estoppel.

The sixth assignment of error is as follows: "The court erred in rendering judgment in favor of plaintiff, because the undisputed testimony shows that plaintiff asserted title to the property and ownership thereof, and was trying to make sale of said property a long time after it was his duty to have rejected said property under his written contracts of sale." The proposition is as follows: "Plaintiff was informed on April 9, 1910, that the title to the property was a limitation title, and he did not finally reject the title until May 28, 1910, and during the time between April 9th and May 28th he was in possession of the property, and asserting ownership, and attempting to sell the property, and thereby speculating upon the situation; and having so delayed, and having so asserted ownership, and having so speculated upon the situation, he could not thereafter reject the property and refuse to consummate the contract of purchase." In the case of Hahl v. Kellogg, 42 Tex. Civ. App. 639, 94 S. W. 391, Judge Neill writing, it was said: "It is contended in this motion that, because no exception was taken by defendant in error to the conclusions of law and fact, nor to the judgment of the court below, we could not consider defendant's cross-assignment of error, which complains that the court erred in not rendering judgment in his favor for $7,500 for the reason that Hahl, as an agent, was guilty of such fraud, gross misconduct, and bad faith to 'his principal as to deprive him of the right to compensation for his services. It is settled by an unbroken line of. authorities that it is not necessary to take exceptions to findings of law and facts, when there is a statement of facts in the record, in order to review them on appeal. Smith v. Abadie (Tex. Civ. App.) 67 S. W. 1077; Brenton & McKay v. Peck [39 Tex. Civ. App. 224] 87 S. W. 903." This doctrine is amply supported. Thompson v. State, 23 Tex. Civ. App. 370, 56 S. W. 603; Connellee v. Roberts, 1 Tex. Civ. App. 363, 23 S. W. 187; Tudor v. Hodges, 71 Tex. 392, 9 S. W. 443; Voight v. Mackle, 71 Tex. 78, 8 S. W. 623.

The motion for rehearing is overruled.