## KIEL v. MILLER. (No. 6630.)

(Court of Civil Appeals of Texas, San Antonio. Nov. 2, 1921.)

1. **Chattel mortgages** ⬤⟿281—**Property held not shown to be deteriorating so as to warrant appointment of receiver.**

In an action based on chattel mortgage for appointment of receiver, plaintiff *held* to have failed to show by testimony that property covered by mortgage had been unusually abused or injured, or that it had unnecessarily deteriorated in value so as to warrant the appointment of a receiver for the purpose of preserving it.

2. **Evidence** ⬤⟿18—**Common knowledge that fish and produce are perishable.**

It is a matter of common knowledge that fish and produce are peculiarly perishable, and that sales thereof must be made quickly, if at all, and that to keep them in stock beyond a few days would destroy their value.

3. **Receivers** ⬤⟿13—**Fraudulent obtaining of business condoned by seller.**

Assuming that one obtained a stock of goods and fixtures by fraud in representing that he had on hand money with which to pay the price of the stock when invoice was completed, such fraud relied on as giving the seller the right to have a receiver appointed for the buyer's business, was condoned and waived by seller's own conduct in voluntarily abandoning the rights he had under the agreement by extending the time of payment.

4. **Chattel mortgages** ⬤⟿281—**When mortgagee is entitled to receiver.**

To entitle a mortgagee to invoke the extraordinary powers of a court of equity and obtain appointment of a receiver, he must clearly show by evidence that the property is being materially wasted or unnecessarily injured in value, or was in fact fraudulently procured from him.

Appeal from District Court, Bexar County; W. B. Terrell, Judge.

Action by J. F. Miller against Harold T. Kiel. From orders granting injunction and appointing receiver, defendant appeals. Reversed and rendered.

Lewright & Lewright, of San Antonio, for appellant.

W. C. Linden, of San Antonio, for appellee.

SMITH, J. In his petition in the court below, filed on June 8, 1921, appellee, Miller, sought to enjoin appellant, Kiel, from collecting any moneys due or to become due him in the conduct of his fish and produce business in San Antonio, and prayed for the appointment of a receiver to take possession of the business and of the stock, fixtures, and premises in use by Kiel in connection therewith, together with all accounts, notes, "bills payable," and uncashed checks in Kiel's possession, as well as of certain lands belonging to Kiel, without notice to Kiel, and without requiring Miller to give bond, the trial court issued the restraining order prayed for, and had notice issued to Kiel to appear on June 11, 1921, to show cause why a receiver should not be appointed for all the properties. This hearing was had, in connection with a motion to dissolve the injunction, on June 20th, but in the meantime, on June 14th, upon verbal order of the court, Miller filed a $500 injunction bond. Upon this hearing the court entered an order appointing a receiver as and for the purposes prayed for, except as to the lands mentioned, and continued the injunction in force until the receiver qualified and took possession of the properties, which Kiel was directed to deliver to him. All the costs were taxed against Kiel. It is from these orders the latter appeals.

In his petition appellee also alleged that on March 28, 1921, appellant executed and delivered to him his promissory note for $1,250 and interest, payable six months after date, and secured by a chattel mortgage on certain automobile trucks and fixtures used in appellant's fish and produce business. The note was not then due, but appellee sought to at once mature the same and foreclose the mortgage, upon the ground that the property covered thereby was procured from him by the fraud of appellant, and was being unnecessarily wasted and injured. Appellee also sued on a debt alleged to be due him from appellant in the sum of $1,267.

[1, 2] We must assume in support of the judgment, which was rendered on conflicting evidence in nearly all aspects of the case, that on March 28, 1921, Miller and Kiel entered into a contract by the terms of which the latter purchased the former's fish and produce business, including two automobile trucks (a Ford and a Dodge), and the fixtures used in the conduct of the business, as well as the stock of fish and produce to be found on hand at the close of business on March 31st, when an invoice would be taken of such stock. The consideration for the trucks and fixtures was fixed at $2,250, $1,000 in cash, and $1,250 in one note, payable in six months, and to be secured by a mortgage on the trucks and fixtures. The consideration for the stock of fish and produce was to be the amount of the invoice (which was ascertained on March 31st to be $1,267), to be paid in cash on April 1st. For bookkeeping reasons, the formal transfer of the business was not to occur until April 1st. When the agreement was reached on March 28th, the $1,000 cash payment was duly made by Kiel, who also executed and delivered to Miller his $1,250 note and mortgage to secure the same, and Miller executed and delivered his bill of sale to Kiel covering the trucks and fixtures, but not the stock. When on April 1st the time arrived for formal transfer of the business

from Miller to Kiel, the former went to the latter and said, "Kiel, I want my money" to which Kiel replied, "I can't give it to you, to-day; I will give it to you in a day or two." This was satisfactory to Miller, who said, "All right, sir," and in that situation Kiel took charge of the business. Miller then from to time agreed to further short extensions for this payment until a few weeks later, when they got into some sort of row about it, and this suit resulted on June 8th.

It was contended by Miller that the property, or at least the two trucks, covered by the mortgage, were being injured and were deteriorating in value, and in support of these contentions Miller alone testified that the trucks were in "good condition" when turned over to Kiel, and were in "pretty bad shape" when he last saw them, and in elaboration of these general conclusions further testified that when he saw the Dodge truck last, which was more than a month before, it was "laid up" on account of having "no rubber on its wheels," and that when he last saw the Ford, about a week before, "it seems like the engine is knocking. I did not test it myself, but I can get a mechanic here pretty quick that overlooked it." He did not produce this mechanic as a witness, however, and rested his case on his own testimony as above set out. Other witnesses testified without contradiction that at the time of the trial both trucks had been very recently equipped with new tires and were in use in the business, and that both had been overhauled since the sale, and as much as $50 had been spent on renewing the parts in the Ford alone, which had "no knock outside the piston slap that cannot be called a knock," and that neither truck had had any abuse "outside the wear and tear that would come in making deliveries," and were then in better condition than when received. This testimony does not show such unusual or unnecessary injury or deterioration in condition or value as would warrant the appointment of a receiver in order to preserve the property to secure the payment of the debt for which it is mortgaged. Miller knew these trucks were to be used in the conduct of the business he sold along with them, and, having himself used them for this purpose in that same business, he must have known they were subject to the usual wear and tear incident thereto, and when he accepted them as security for the payment of a debt, the maturity of which he himself fixed at six months, he will not be heard to declare the debt due at an earlier date and invoke the aid of equity to preserve the property in statu quo merely because, in the use to which he knew they were to be put, and as an incident to such use, the tires on one of them wear out, and an unexplained knock develops in the other. No contention was made that the fixtures covered by the mortgage were being wasted or injured. We hold,

then, that appellee failed to show by any testimony that the property covered by the mortgage had been unusually abused or injured, or that it had unnecessarily deteriorated in value so as to warrant the appointment of a receiver for the purpose of preserving them. There was no contention of a waste or deterioration in the stock of fish and produce. All parties agree, in effect, and it is of course a matter of common knowledge, that fish and produce are peculiarly perishable, and that sales thereof must be made quickly, if at all, and that to keep them in stock beyond a few days would destroy their value.

[3] The only other ground upon which appellee sought the appointment of a receiver was that possession of the business and property was obtained by Kiel through fraud, in that Kiel represented that he had on hand the money with which to pay the invoice price of the stock of fish and produce when the invoice was completed, and that he would pay over this amount on April 1st. The testimony on this point has been stated in the light most favorable to appellee, and shows, when analyzed, merely that Kiel promised to pay this sum on April 1st, when the business was to be turned over to him, and that when the time for making this payment arrived Kiel said he did not have the money, and Miller thereupon agreed to extend the time of payment and placed Kiel in possession. Miller thus voluntarily agreed to the very thing that was done and the manner of doing it, and the transaction was reduced to one of a simple sale of the stock on a credit without security for the debt. If Kiel's intention or conduct was fraudulent to begin with, it was thus surely condoned and waived by Miller's own conduct in voluntarily abandoning the rights he had under the original agreement and placing himself in the position he now complains of.

[4] In our view of the case we perceive no occasion to discuss or determine the sufficiency of the allegations in the original bill to warrant the issuance of the order restraining Kiel from collecting accounts or cashing checks received in payment of accounts, or from disposing of any of the property involved. The potent question before us is whether or not the evidence warranted the court below in continuing in force the restraining order and placing the property in the hands of a receiver. We have endeavored to show, and so hold, that there was no evidence showing such waste or injury to any of the property as to warrant appellee to declare the note due before its maturity date, or entitle him to an order restraining the further use or disposition thereof, or the appointment of a receiver. So also do we think it clear that appellee failed to show any such fraud on the part of appellant in obtaining possession of any of the property as to warrant resort to any of the extraordinary powers of a court

of equity. To entitle a litigant to invoke these powers, he must clearly show by evidence that in the one case the property is being materially wasted or unnecessarily injured in value, or in the other that the property was in fact fraudulently procured from him. In both respects appellee failed, in our opinion, to make this showing. For these reasons we conclude that the court erred in refusing to dissolve the injunction, and in granting the application for the appointment of a receiver. Carter v. Hightower, 79 Tex. 135, 15 S. W. 223; Cahn v. Johnson, 12 Tex. Civ. App. 304, 33 S. W. 1000; Brenton v. McKay, 39 Tex. Civ. App. 224, 87 S. W. 898.

The judgment is reversed, and judgment is here rendered that the injunction be dissolved and the receivership and injunction preceedings set aside and dismissed. All costs of said proceedings, and of this appeal, will be taxed against appellee.

&#9758;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

